1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **DISTRICT OF NEVADA**

7

8 KEVIN JAMES LISLE,                     )
                                        )
9            Petitioner,                )          2:03-cv-1006-RLH-LRL
                                        )
10 vs.                                   )
                                        )          **ORDER**
11 E.K. McDANIEL, *et al.*,              )
                                        )
12            Respondents.              )
                                        )
13 _____/

14

15 Introduction

16        In this capital habeas corpus action, on May 3, 2006, petitioner filed a motion entitled

17 Motion for Extraordinary Relief (docket #62), along with nine exhibits in support of the motion

18 (docket #62, #63, and #64).

19        In the Motion for Extraordinary Relief, petitioner claims that he suffers from a heart

20 condition, high blood pressure, blood clotting, and a rash on his groin, and that he is receiving

21 inadequate medical care with respect to those conditions at Ely State Prison (ESP).  In his motion,

22 petitioner seeks the following relief:

23        1.      An order to enjoin the deliberate indifference related to
          Petitioner's treatment at Ely State Prison concerning his medical conditions
24        and to enjoin the continuing infringement on the attorney-client relationship
          between Petitioner and undersigned counsel due to the neglect of Petitioner's
25        physical impairments and lack of proper medical care;

26

1         2.     A stay in proceedings until Petitioner's medical needs are met
and his condition is stabilized;

2

3         3.     An order for a preliminary injunction;

4         4.     An evidentiary hearing regarding Petitioner's treatment and
medical care;

5         5.     An order requiring the Attorney General to make a duplicate of
all medical records, pictures, testing data, emails, audio and video tapes of

6 medical consultations and treatment, of any death row inmate, in the
possession of Ely State Prison; and to provide copies of all of Kevin Lisle's

7 medical records, testing data, emails, pictures, audio and video recordings of
his treatment and consultation to undersigned counsel;

8

9         6.     Any additional discovery regarding these medical issues as this
Court sees fit.

10 Motion for Extraordinary Relief (docket #62), pp. 1-2; *see also id*. at 16.

11      Respondents filed an opposition to petitioner's motion on May 16, 2006 (docket #65).

12 Respondents argue that petitioner cannot seek such relief regarding the conditions of his confinement

13 within this habeas action, but rather must seek such relief in a civil rights action pursuant to

14 42 U.S.C. § 1983.

15      Petitioner replied on May 30, 2006 (docket #66), and he filed two further exhibits

16 with his reply.[1]

17 <u>Petitioner's Claims of Constitutionally Inadequate Medical Care</u>

18      Much of petitioner's motion is dedicated to showing that prison officials have not

19 provided him with adequate medical care, in violation of his rights under Eighth and Fourteenth

20 Amendments to the United States Constitution.  For the most part, this argument is misplaced

21 in this habeas action.  The question in a federal habeas corpus action is the legality of the

22 petitioner's confinement, vis-a-vis the federal constitution and other applicable federal law; on the

23

24

25     [1]  The exhibits filed by petitioner with his motion, found in the record at docket #62, #63,

26 and #64, are cited in this order in the following form: "Exhibit 1."  The exhibits filed by petitioner
with his reply, located in the record at docket #66, are cited in this order in the following form:
"Exhibit 1 to Reply."

1   other hand, civil rights violations related to prison conditions are litigated in actions brought

2   pursuant to 42 U.S.C. § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 498-99 (1973).

3          Habeas actions and section 1983 actions are subject to different procedures and

4   prerequisites.  For example, the exhaustion requirements are different:  complete exhaustion of state

5   judicial remedies is required as a prerequisite to habeas actions, while exhaustion of administrative

6   remedies is a prerequisite to section 1983 actions.  *See Ramirez v. Galaza*, 334 F3d 850, 854-55

7   (9th Cir. 2003), *cert. denied*, 541 U.S. 1063 (2004) (discussing the differing exhaustion rules).

8   Also, the procedural rules applicable in the two classes of cases are different:  habeas cases are

9   litigated under the Rules Governing Section 2254 Cases in the United States District Courts, while

10  section 1983 cases are litigated pursuant to the rules governing civil litigation in general.

11         Petitioner relies upon the landmark Supreme Court cases of *Lewis v. Casey*, 518 U.S.

12  343 (1996), and  *Bounds v. Smith*, 430 U.S. 817 (1977).  *See* Motion for Extraordinary Relief, p. 9.

13  It is notable, however, that those were civil rights actions.  Though those cases involved issues

14  involving the prisoner plaintiffs' right of access to the courts in habeas cases, the prisoners brought

15  separate civil rights actions to vindicate those rights.

16         Petitioner appears to assert that the Court should, in this habeas action, address the

17  issue of petitioner's alleged inadequate medical care "in exercising its inherent power to control the

18  proceedings before it and to provide a remedy for the infringement on the right to counsel...."  *See*

19  Motion for Extraordinary Relief, p. 11, lines 3-5.  While the Court may have such inherent power,

20  the Court will decline to exercise it, given that there is an adequate remedy available under

21  42 U.S.C. § 1983, specifically tailored for the resolution of such issues.

22         Petitioner has not stated any reason why he would be unable to pursue his civil rights

23  claims in an action under 42 U.S.C. § 1983, or why that remedy would be inadequate.  It appears to

24  the Court that petitioner's "Motion for Extraordinary Relief" in this habeas case is, in effect -- if not

25  as a matter of design --  a circumvention of the usual procedures and prerequisites applicable to civil

26  rights claims regarding prison conditions.   The Court will decline  in this habeas action to entertain

3

1   petitioner's civil rights claims regarding the conditions of his confinement.  *See Ramirez*, 334 F.3d

2   at 859 ("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to

3   a prison condition will not necessarily shorten the prisoner's sentence."); *Badea v. Cox*, 931 F.2d

4   573, 574 (9th Cir. 1991) ("A civil rights action ... is the proper method of challenging 'conditions of

5   confinement.'" (citing *Preiser*)); *Crawford v. Bell*, 599 F.2d 890, 891-92 ( 9th Cir. 1979)

6   ("According to traditional interpretation, the writ of habeas corpus is limited to attacks upon the

7   legality or duration of confinement." (citing *Preiser*)).

8   Petitioner's Ability to Understand His Position and Communicate Rationally with Counsel

9       Petitioner argues that the inadequate medical care is undermining his ability to

10  communicate rationally with his counsel regarding his habeas corpus action.  This argument raises

11  the issue of petitioner's statutory right to legal representation under 21 U.S.C. § 848(q), and it

12  appears calculated to bring his motion within the ambit of *Rohan ex rel. Gates v. Woodford*, 334

13  F.3d 803 (9th Cir. 2003).

14      In *Rohan*, the court held that "where an incompetent capital habeas petitioner

15  raises claims that could potentially benefit from his ability to communicate rationally, refusing to

16  stay proceedings pending restoration of competence denies him his statutory right to assistance

17  of counsel, whether or not counsel can identify with precision the information sought."  *Rohan*,

18  334 F.3d at 819.  The *Rohan* court stated, with respect to the definition of competence, that the

19  relevant question is whether the petitioner "has the capacity to understand his position and to

20  communicate rationally with counsel."  *Id.*

21      However, when viewed from the perspective of *Rohan*, petitioner's motion has

22  significant shortcomings.

23      First, most of the relief sought by petitioner by means of his motion goes well beyond

24  the sort of stay envisioned in *Rohan*.  *Rohan* provides only for a stay pending the restoration of a

25  petitioner's competence.

26

4

1          Second, viewed as a motion for a stay pursuant to *Rohan*, much of the argument and

2    evidence submitted by petitioner is beside the point.  Petitioner dedicates a large part of his motion,

3    and the evidence supporting it, to an attempt to show that prison officials have provided him

4    inadequate medical care, in violation of the Eighth and Fourteenth Amendments to the United States

5    Constitution.  That argument, however, is not directly pertinent to a motion under *Rohan*.  To show

6    that a stay is warranted under *Rohan*, a habeas petitioner must show that he lacks the capacity to

7    understand his position and to communicate rationally with counsel.  *See Rohan*, 334 F.3d at 819.

8    Under *Rohan*, the cause of the incompetency is not directly at issue.  Under *Rohan*, it does not matter

9    whether or not state officials bear responsibility for a petitioner's incompetence, or whether

10   constitutional violations have somehow contributed to the incompetence; the issue is the petitioner's

11   competence.

12          Third, with respect to the central inquiry under *Rohan*, the petitioner's ability to

13   understand his position and communicate rationally with counsel, petitioner's motion lacks

14   evidentiary support.

15          There appears to be no argument or evidence at all addressing the question of

16   petitioner's capacity to understand his position.

17          With respect to petitioner's capacity to communicate rationally with counsel,

18   petitioner's counsel explains his position as follows:

19          The neglect of those impairments by prison officials has resulted in a situation
             in which he cannot conduct "rational communication" with counsel about
20           the issues in his case, *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 813
             (9th Cir. 2003), because he is so affected by the neglect of his physical
21           condition; and therefore he is being deprived of the "meaningful assistance of
             counsel," in the proceedings before this Court.  *Id.*
22
                                     *    *    *
23
             Undersigned counsel's efforts to provide Petitioner with "meaningful
24           assistance of counsel" have been and are being "hindered" by ESP's refusal to
             properly treat and medicate Petitioner and have unconstitutionally interfered
25           with the attorney-client relationship.  This lack of adequate medical care has
             impeded Petitioner's ability to assist undersigned counsel in representing him
26           in his current federal habeas litigation, because of his unstable medical
             condition, and this situation is aggravated by Petitioner's mental illness, which

                                              5

1     may constitute grounds for this Court to find Petitioner incompetent to
      proceed under *Rohan*, 334 F.3d at 806.  [Footnote: Petitioner has been
2     diagnosed as suffering from schizotypal personality features and generalized
      anxiety disorder.  Ex. 5.  These conditions exacerbate the effect of his medical
3     condition and ESP's failure to treat him.]

4                                         *     *     *

5     The seriousness of Petitioner's medical conditions has prevented him from
      effectively communicating with counsel about his case as he has been unable
6     to focus on anything but his seriously declining health.  *See* Ex. 1.

7  Motion for Extraordinary Relief, pp. 3, 10, 12 ; *see also id*. at p. 8, line 21 - p. 9, line 1; p. 13,

8  lines 19-22.

9          Exhibit 1, cited in the above quotation, is a declaration of petitioner's counsel.  In that

10  declaration, counsel states:

11     My representation of Mr. Lisle has been thwarted by his continuing medical
       problems.  Mr. Lisle continually suffers from pressure in his head, numbness
12     in his legs and arms, vertigo when he lays down, dizziness, shortness of
       breath, flashes in the corners of his eyes, swelling in his legs, and hard heart
13     beats when he is motionless.  He experiences these symptoms on a daily basis.

14                                        *     *     *

15     On April 18, 2006, I saw Mr. Lisle at Ely State Prison.  When asked how he
       was feeling, he expressed the following:  head pressure, pain in the veins in
16     his neck, numbness in his legs and arms, right leg swelling, flashes in the
       corner of his eyes, dizziness, and shortness of breath.  Mr. Lisle exhibited
17     shortness of breath and occasional panting as we talked.  I asked Mr. Lisle to
       write information down for me.  Several times, Mr. Lisle had to stop because
18     he was having difficulty seeing the information I referred to.  He said that he
       was seeing flashes in the corners of his eyes.  Mr. Lisle often rubbed his eyes
19     and said he was having difficulty focusing on what we were discussing.

20                                        *     *     *

21     Mr. Lisle contacted me on April 28, 2006 about the deterioration in his
       condition.  Because of his continuing symptoms and stress over not being
22     treated, he can no longer write for any period of time nor read anything.

23                                        *     *     *

24     Mr. Lisle's deteriorating health and the lack of any type of proper medical
       treatment impairs my ability to properly represent Mr. Lisle during his habeas
25     proceedings.  Due to his continual reports of chest pain and numbness in his
       arms and legs -- that is indicative of a heart attack -- Mr. Lisle and I are
26     extremely concerned that he may die or suffer some lasting  mental
       impairment.  I cannot represent Mr. Lisle nor can he assist in his own defense,

                                              6

1     in his habeas proceedings, without proper medical care for his heart, blood
pressure, and other medical conditions.  Because he is constantly in fear of
2     imminent death or further disability as a result of his medical conditions and
the lack of treatment for them, and is continuously distracted by the symptoms
3     from which he suffers, Petitioner cannot focus on the legal and factual issues
which are presented by [these] habeas proceedings and which I must discuss
4     [with] him.

5    Exhibit 1,  ¶¶ 2, 11, 16, 17.

6         In his Reply, petitioner adds the following to his argument in this regard:

7          During conversations with counsel, Petitioner talks only about his
medical condition.  He is unable to discuss legal issues due to his concern that
8     he will die.  Because he is still experiencing dizziness, chest pains, leg pains,
vertigo, and numbness in his extremities, his mind is set on receiving some
9     type of medical care to alleviate his pain and treat his condition.  When
undersigned counsel attempted to discuss the matters in his case, Petitioner
10    saw these conversations as futile because he believes the prison is killing him
by refusing to treat him.  Discussions with undersigned counsel focus on the
11    conflicting information he is given by the prison about his medical condition
instead of the factual matters surrounding his federal habeas case.
12    Undersigned counsel has repeatedly tried to facilitate Petitioner's treatment
through unofficial channels.  *See* Ex. 1 to Motion for Extraordinary Relief.
13    However, Petitioner's health continues to deteriorate, derailing all discussions
about his current federal litigation.

14

15         The failure to properly treat Petitioner's condition affect[s] not only
the attorney-client relationship, but the development of other areas of his
16    federal habeas litigation.  Undersigned counsel has attempted to have
Petitioner evaluated by a mental health expert.  That expert is unable to
17    conduct any psychological testing until Petitioner's medical condition has
stabilized.  *See* Ex. 1 *hereto*.  According to Dr. Barry Crown, a
18    neuropsychologist, Petitioner needs to be fully diagnosed for his medical
condition and stabilized prior to his psychological evaluation because his
19    conditions [have] the potential of distorting the results.  Dr. Crown stated that
he will need an indication from a physician that Petitioner is stabilized prior to
20    his participation and evaluation.  *See id.*  This evaluation is imperative for
Petitioner's case.  Several of the issues pertaining to his federal habeas
21    litigation will be affected by Dr. Crown's evaluation.  The fact that it cannot
be completed until Petitioner's condition is treated and stabilized is indicative
22    of the severity of his medical condition.

23         Additionally, other matters related to Petitioner's habeas case cannot
be developed or completed until communication between him and counsel is
24    restored.  Petitioner needs to assist in the development of a social history, guilt
and penalty phase investigation, and various other areas pertaining to the
25    development of his amended habeas petition.  As in *Rohan*, these matters
cannot be completed without Petitioner's assistance.  *Rohan ex rel. Gates v.*
26    *Woodford*, 334 F.3d 803 (9th Cir. 2003).

1   Reply, pp. 4-5 (footnote omitted); *see also* Reply, pp. 2-3 ("Petitioner's medical condition makes it

2   *nearly* impossible for him to discuss the factual matters pertaining to his federal habeas litigation

3   with undersigned counsel." (emphasis added)), and p. 6.

4           In essence, as the Court understands it, the argument regarding the effect of

5   petitioner's medical condition upon his ability to communicate rationally with counsel is that

6   petitioner's symptoms are so distracting that he cannot focus on his habeas litigation.  The Court

7   does not find petitioner's position to be convincing.  The question under *Rohan* is whether petitioner

8   is *unable* -- without *capacity* -- to communicate rationally with his counsel regarding his habeas

9   litigation.  The Court finds that petitioner's motion falls far short of making such a showing.

10           There is no evidence that petitioner currently suffers from any mental condition that

11   prevents him from communicating rationally with counsel.   Petitioner submits Exhibit 5, which is a

12   psychological report from 1995.  Clearly, that report is too old to be of any real weight in assessing

13   petitioner's current competence.  That said, however, the notable portions are as follows:

14       Possible Diagnoses

15       He appears to fit the following Axis II classifications best:  Passive-
    Aggressive (Negativistic) Personality Traits, Depressive Personality Traits,

16       Self-defeating Personality Features, and Schizotypal Personality Features.

17       Axis I clinical syndromes are suggested by the client's MCMI-III profile in the
    areas of Generalized Anxiety Disorder, Adjustment Disorder with Depressed

18       Mood, and Alcohol Abuse.

19       Therapeutic Considerations

20       Moody and unpredictable, this patient may act in a self-demeaning yet angry
    way in anticipation of condemnation from others.  Psychological difficulties

21       may leave him feeling unduly vulnerable and contrary.  Close attention and a
    supportive attitude should diminish noncompliance.  Any sign of

22       uncooperativeness should be responded to in a firm, no-nonsense manner that
    is professional rather than punitive in character.  A brief and focused approach

23       to therapy should be effective in moderating this patient's erratic emotions and
    behavior.

24

25

26

1    Exhibit 5, p. 2.  While that report indicates that petitioner had mental-health issues in 1995, it does

2    not come anywhere near to showing that he was without the capacity then -- much less now -- to

3    communicate rationally with counsel.

4           Petitioner also submits a declaration of a neuropsychologist, Barry M. Crown, Ph.D.,

5    in support of his position.  Exhibit 1 to Reply.  In that declaration, Dr. Crown states:

6           4.      Due to the severity of the medical conditions Mr. Lisle is
        currently suffering from, I cannot conduct a neuropsychological evaluation at
7        this time.  Conducting a neuropsychological evaluation while a patient is
        suffering from severe medical illness falls below a reasonable standard of
8        care.  A client must be able to concentrate for extended periods of time, be of
        stable health, and fit physical condition.  Mr. Lisle's physical impairments
9        affect his ability to concentrate and focus on the questions and testing required
        for a neuropsychological examination.  Because Mr. Lisle complained of
10       vertigo and dizziness, it is highly unlikely that he will be able to undergo
        neuropsychological testing in the next few months.

11

12          5.      Mr. Lisle must be fully diagnosed and treated before any
        mental health assessment can be completed.  His current medical condition
13       will distort any neuropsychological testing conducted at this time.  It is likely
        that his condition will inhibit his ability to properly assess the questions being
14       asked which will impact on the scoring of any testing done.  Any mental
        health impairment that Mr. Lisle possibly suffers from may not be discovered
15       based on his medical condition.  For these reasons, it is imperative that a
        medical doctor confirm that Mr. Lisle's condition has been treated and he is
16       stable before any mental health testing can be conducted.

17   Exhibit 1 to Reply, pp. 1-2.  Dr. Crown's declaration does not speak at all to the capacity of

18   petitioner to communicate with his counsel about this action; rather Dr. Crown's declaration speaks

19   to the capacity of petitioner to undergo a particular type of neuropsychological evaluation.[2]

20   So, while Dr. Crown's declaration might indicate that petitioner is having difficulty completing

21   neuropsychological testing that he believes is important to his case, that declaration has no bearing

22   on the standard that must be met to justify a stay under *Rohan*.

23

24   _____

25          [2]  It appears to the Court that the neuropsychological testing referred to by Dr. Crown is
26   something different from the sort of professional assessment that might have been conducted to support
     petitioner's motion.  The effects of petitioner's medical condition would be an important subject of such
     an assessment; not a hindrance to it.

1    In the absence of any demonstrable mental condition preventing him from
2  communicating rationally with counsel regarding his habeas case, there are only the effects of
3  petitioner's physical condition to consider.  In that regard, the Court notes that the exhibits submitted
4  by petitioner reflect that petitioner is able to communicate lucidly with prison officials regarding his
5  medical care.  *See* Exhibit 2; Exhibit 2 to Reply.  If petitioner is able to do that, it seems unlikely that
6  he is without *the capacity* to communicate rationally with counsel about his litigation.  Petitioner has
7  not made a showing to the contrary.

8    The only evidence submitted to the Court regarding the effect of petitioner's medical
9  problems on his ability to communicate with counsel is the declaration of petitioner's counsel.
10 *See* Exhibit 1.  The majority of that declaration provides information about petitioner's medical
11 condition and appears dedicated to showing that prison officials have not provided petitioner
12 adequate care.  *See*, *e.g.*, Exhibit 1, ¶¶ 3-10, 12-14.  Only in four paragraphs of that declaration does
13 counsel focus on the effect of petitioner's condition on his ability to communicate with counsel; and,
14 in those paragraphs, counsel really does nothing more than indicate that petitioner has seemed too
15 distracted by his medical condition to concentrate on his case.  *See* Exhibit 1, ¶¶ 2, 11, 16, 17
16 (quoted extensively, *supra*).  The Court determines that this slim evidentiary support is insufficient
17 to show that petitioner may lack the capacity to understand his position or communicate rationally
18 with counsel, and that a stay might be warranted pursuant to *Rohan*.

19   Moreover, the Court determines that an evidentiary hearing is not warranted at this
20 time on the question of petitioner's competence.  In his motion, what little petitioner says about his
21 need for an evidentiary hearing is focused on his claim that prison officials have unconstitutionally
22 denied him adequate medical care.  *See* Motion for Extraordinary Relief, p. 2, line 1 ("evidentiary
23 hearing regarding Petitioner's treatment and medical care"); p. 3, lines 23-25 ("evidentiary hearing to
24 establish the pervasiveness of the inadequate medical care being provided to Petitioner"); *see also*
25 Reply, p. 3.  Petitioner does not specifically request an evidentiary hearing focused on the subject of
26 his competence, and, at any rate, does not indicate what sort of evidence, beyond what little is

10

1  presented in the declaration of his counsel, could be presented at such a hearing.  In view of the

2  nature of petitioner's motion, the lack of any substantial evidence to support a finding that petitioner

3  lacks the capacity to understand his position or communicate rationally with counsel, and petitioner's

4  failure to make any showing that an evidentiary hearing is warranted, the Court will deny petitioner's

5  motion.

6          **IT IS THEREFORE ORDERED** that petitioner's Motion for Extraordinary Relief

7  (docket #62) is **DENIED**.

8

9          Dated this ___18th___ day of June, 2006.

10

11          _____

12          UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26