1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                          DISTRICT OF NEVADA
8                                * * *
9   KEVIN JAMES LISLE,                  Case No. 2:03-cv-1006-MMD-CWH
10                        Petitioner,                ORDER
    v.
11
12  TIMOTHY FILSON, *et al.*,
13                        Respondents.
14

## I.    INTRODUCTION

Before the Court, in this capital habeas corpus action, are a motion to dismiss filed by Respondents, and a motion for leave to conduct discovery, motion for medical examination and site inspection, and motion for evidentiary hearing filed by Petitioner. For the following reasons, the Court will grant in part and deny in part the motion to dismiss, and will deny Petitioner's motions for leave to conduct discovery, for medical examination and site inspection, and for an evidentiary hearing.

## II.   BACKGROUND

This habeas corpus action is brought pursuant to 28 U.S.C. § 2254, by Kevin James Lisle, a Nevada prisoner sentenced to death. Lisle's conviction and death sentence, at issue in this case, are for the murder of Justin Lusch in Las Vegas on August 22, 1994. In its opinion on Lisle's direct appeal, the Nevada Supreme Court described the factual background of the case as follows:

///

On August 22, 1994, between 4:00 to 4:30 a.m., the body of nineteen-year-old Justin Lusch ("Justin") was found shot to death in the Lone Mountain desert area in Las Vegas.

* * *

In early July 1994, Justin began living with a friend, Eric Resma ("Resma") in Resma's converted garage, which was a known "drug house." About August 8, 1994, two weeks prior to Justin's death, Lisle and [Jerry] Lopez visited Resma's garage for the first time, looking for their friend, Jason Sullivan ("Sullivan"), who had recently lived there, but had since moved out. Resma talked with Lisle and Lopez and invited them inside to ingest drugs. From that day forward, Lisle and Lopez continued to frequent Resma's residence. At some point thereafter, Resma found a .380 caliber automatic gun between his couch cushions. When Resma asked the occupants of the garage where it came from, either Lisle or Lopez took the gun from Resma and put it in his own pants waistband.

On August 17, 1994, Lisle and Sullivan participated in a drug transaction at Resma's house. Lisle sold Sullivan ten grams of methamphetamine with the understanding that Sullivan would pay Lisle for the narcotics within a few days. Sullivan then sold Justin 1.75 grams for which Justin would pay later. Sullivan took his portion of the drugs, along with five or six rifles he also presumably received from Lisle, to the house of his girlfriend, Nicole Catherina ("Catherina"), where Sullivan was then living. Later that day, Sullivan was arrested on unrelated charges.

The next day, on August 18, 1994, Catherina contacted Resma so that she could return the drugs and guns to Lisle. Resma and Justin went to Catherina's residence to pick up the items and took them to Resma's house where Lisle and Lopez were waiting. Resma gave the drugs to Lisle, but put the rifles, wrapped in a blanket, on the couch. Justin told Lisle that Sullivan had given him a portion of the drugs, and Lisle demanded to know their location. Justin replied that the drugs were locked away and he did not have them in his possession at the moment. Lisle continued to demand to see the drugs. He appeared very upset and seemed to disbelieve Justin. Resma then stated that he had the drugs and asked Lisle if he wanted to see them. Lisle calmed down once Resma interjected; Lisle stated that he did not need to see the drugs.

Throughout this conversation, Lisle was "fiddling" with his .380 caliber weapon. He was cleaning it, and the clip containing ammunition was not in the gun. Nevertheless, Justin asked Lisle if he was threatening him with the gun. Lisle said he was not; if he had a problem with Justin, he would take him outside and they would box.

Later that day, Justin separately told his friends, Ryan Cizl ("Cizl") and Jeff Kurtz ("Kurtz"), that Lisle had held a gun to his head. He also told them that later Lisle apologized to Justin. Both Kurtz and Cizl testified at trial that although Justin was prone to exaggerate, this time they did not detect any hyperbole from him.

Sometime between August 18, 1994, and August 21, 1994, Justin found the rifles that were returned at Resma's residence. [Footnote: It is unclear from the record how Justin "found" these rifles when he participated in obtaining them from Catherine to return to Lisle. Presumably, since the

rifles were wrapped in a blanket, Justin did not know what they were.] He thought they were stolen and stated that he wanted the guns removed from the residence or else he would turn them over to his father, the chief of police for North Las Vegas. Thereafter, another resident at Resma's garage, T.J. Willis ("Willis"), told Lisle what Justin had said about the guns. Lisle apparently stated to Willis that he advised Justin not to do that.

On August 21, 1994, in the late evening hours, Lisle, Lopez, and some other friends, including Adam Evans ("Evans"), were at the house of Anthony Vanella ("Vanella"). Lisle stated, in Evans' presence, that he was going to kill a "snitch" named Justin. Lopez was not present at this conversation.

In the meantime, at approximately 10:30 p.m., Kurtz telephoned Justin to request that Justin procure some drugs for him. Between 11 p.m. to midnight, Justin gave another friend a ride home from Resma's garage. While Justin was out, Kurtz called back again and left a message. When Justin returned home, he did not call Kurtz back right away.

At approximately 2 a.m. on August 22, 1994, Lisle and Lopez left Vanella's house. Either Lopez or Lisle had a .380 caliber gun tucked into his waistband.

At approximately 2:30 a.m., Justin returned Kurtz's phone call to inform him that he was going out to get the drugs. Justin stated that he was on his way out the door at that moment and he would contact Kurtz in fifteen minutes. He stated he was getting the drugs from some people known as "Vatos" and that they were at the door right now. Lisle and Lopez were known as "Vatos," and Justin, in particular, enjoyed calling them by that nickname. Kurtz, who was anxiously awaiting his delivery, called Justin again at 3 a.m. and received no answer.

Between approximately 4:00 to 4:30 a.m., Justin's body was found at an area in the desert known as Lone Mountain. It was later determined that this was an area that Lisle and Lopez were known to frequent for shooting practice. Justin was shot three times: once in the upper chest, once in the right side of his back, and once in his lower back.

Meanwhile, between 4:00 to 4:30 a.m., Lisle and Lopez returned to Vanella's house. Lisle had the gun in his possession. Evans testified that Lisle told Vanella, "I smoked him. I got him. I killed a snitch. We took him to where we used to shoot and he ran and I shot him in the back." In addition, Vanella's mother overheard Lisle say, "I took him to the desert and I did him. I shot him four times and I think I hit him three. He was a rat. I knew he was a rat and I'm glad I did it." Lisle also mentioned the "snitch's" name was Justin. Lopez then stated, "We did it clean and we did it good. Nobody is going to find out that we did it. You don't have to worry."

Vanella then suggested to Lisle and Lopez to get rid of the gun, whereupon Lisle stated that he would go out and sell it. Lisle and Lopez then left Vanella's house and returned about one hour later. Lisle stated he sold the gun for $50.00.

Later on August 22, 1994, between 9 or 10 p.m., Vanella brought Lisle and Lopez to the house of Larry Prince ("Prince") for the first time. [Footnote: Prince was a man in his late forties who provided food, drugs,

3

money, and a place to stay for teenagers and young adults in the neighborhood.] Lisle, Vanella, and Prince discussed a drug transaction. At the conclusion of this conversation, Lisle asked Vanella to leave the room. When Prince and Lisle were alone, Lisle stated, "There's something I have to let you know. I killed a snake. I mean I offed a snitch, I offed someone. I offed a human being. I killed someone." He then stated the victim was a son of a police officer, but did not name him. Lisle did, however, state that it would be on the news that evening. At 11 p.m., they all watched the news. Upon seeing a story of a body found in the desert, Lisle seemed to display a sense of satisfaction, while Lopez portrayed no reaction at all.

The next day, August 23, 1994, Prince assisted Lisle and Lopez in disposing of a trash bag that purportedly contained two pairs of tennis shoes. Evans testified that within a couple days after the murder, he noticed that Lisle and Lopez wore different tennis shoes than they had worn prior to Justin's death.

Sometime between August 22, 1994, and August 25, 1994, Lisle showed Prince a .380 caliber automatic gun, but explained that this was not the weapon used to kill Justin. Lisle stated, "Don't worry about that one. That one's long gone."

On August 25, 1994, the police arrested Prince at his home for possession of a controlled substance with intent to sell. While there, the police observed Lisle sitting in a certain armchair. Later that day, upon searching Prince's house pursuant to a search warrant, the police found a .380 caliber gun tucked into the seat cushions of the very chair on which Lisle had been sitting. Although this gun was later determined not to be the same weapon that killed Justin, it was discovered that the brand of bullets found in the gun was the same brand used to shoot Justin.

In late August 1994, Lisle informed his friend, John Melcher ("Melcher"), that he was "laying low" because the police were trying to "get" him for the murder of the North Las Vegas police chief's son, but that the police did not have enough evidence on him.

Lisle introduced Melcher to Lopez. Lopez told Melcher that he and Lisle picked up Justin and took him to the desert. Lopez stopped the car, and Lisle and Justin got out and went to the back of the car, whereupon Lopez observed Lisle shoot Justin. Lopez was able to witness this incident by looking at the rear-view mirror.

On October 22, 1994, Lisle, Melcher, and Evans were involved in the murder of Kip Logan ("Logan"). Lisle was eventually convicted of first degree murder and sentenced to death. [Footnote: Lisle was apparently sitting in the passenger's seat of a van while Melcher was driving it on the freeway. Evans was sitting in the back seat behind Lisle. Lisle was making gang hand signals and yelling at the cars that passed them on the right side. Logan was a driver of a car next to them, who started to laugh at Lisle. Lisle pulled out a gun and shot Logan, killing him.]

Melcher and Evans eventually agreed to a plea bargain for their participation in Logan's death in exchange for testifying against Lisle for the killing of both Logan and Justin. In addition, Prince plea bargained the August 25, 1994 drug charges pending against him in exchange for testifying at both murder trials.

1
2
          In early 1995, while Melcher and Lisle were incarcerated together
   because of the Logan murder, Lisle told Melcher that he looked Justin in the
   eyes before he killed him and that he got a thrill from it.

3
4
5
          In July 1995, Lisle and Lopez were arrested for Justin's murder, and
   on July 28, 1995, an information was filed charging Lisle and Lopez each
   with murder with use of a deadly weapon and conspiracy to commit murder.
   In addition, Lisle was charged with being an ex-felon in possession of a
   firearm.

6
7
8
9
          Trial began on April 9, 1996, and concluded on April 18, 1996,
   resulting in verdicts of first degree murder with use of a deadly weapon and
   conspiracy to commit murder for both Lisle and Lopez. Lisle was also found
   guilty of being an ex-felon in possession of a firearm. The penalty hearing
   began April 22, 1996, and concluded on April 25, 1996, resulting in a
   sentence of death for Lisle and a sentence of life in prison with the possibility
   of parole for Lopez.

10
11
*Lisle v. State*, 941 P.2d 459, 463-65 (Nev. 1997) (order filed as Exh. DDD (ECF No. 187-4)).

12
13
          In a separate case pending in this Court, Case No. 2:03-cv-1005-JCM-CWH, Lisle seeks relief with respect to his conviction and death sentence for the Logan murder.

14
15
16
17
18
19
20
21
22
          In the case at issue here, regarding the Lusch murder, the judgment of conviction was entered on June 7, 1996. (*See* Judgment of Conviction, Exh. OO (ECF No. 186-15).) Lisle appealed to the Nevada Supreme Court, and the Nevada Supreme Court affirmed on June 17, 1997. (*See* Appellant's Opening Brief, Exh. WW (ECF No. 186-23); *see also Lisle*, 941 P.2d 459.) The Nevada Supreme Court denied Lisle's petition for rehearing. (*See* Order Denying Rehearing, Exh. GGG (ECF No. 187-7).) Lisle petitioned to the United States Supreme Court for certiorari; the petition was denied on October 5, 1998. (*See* Letter, Exh. KKK (ECF No. 187-11).) The Nevada Supreme Court's remittitur was issued on November 3, 1998. (*See* Remittitur, Exh. MMM (ECF No. 187-13).)

23
24
25
26
27
28
          Lisle filed a *pro se* petition for writ of habeas corpus in the state district court on November 12, 1998. (*See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. NNN (ECF No. 187-14).) Counsel was appointed, and, with counsel, Lisle filed a supplement to his petition on June 30, 2000. (*See* Supplemental Points and Authorities, Exh. VVV (ECF No. 187-22).) The state district court denied the petition on November 29, 2000. (*See* Findings of Fact, Conclusions of Law and Order, Exh. ZZZ (ECF No. 187-

26).) Lisle appealed, and the Nevada Supreme Court affirmed the denial of the petition on July 9, 2002. (*See* Appellant's Opening Brief, Exh. BBBB (ECF No. 188-2); Order of Affirmance, Exh. EEEE (ECF No. 188-5).) The remittitur was issued on August 5, 2002. (*See* Remittitur, Exh. EEEEa (ECF No. 188-6).)

Lisle initiated this action by filing a petition for writ of habeas corpus in this Court on August 20, 2003. (ECF No. 1.) Lisle's original petition in this case was signed on his behalf by counsel. However, Lisle requested appointment of counsel by the Court, and the Court appointed the Federal Public Defender for the District of Nevada ("FPD") to represent him. (ECF Nos. 5, 13, 15.) Lisle then filed a motion for leave to conduct discovery (ECF No. 47), and extensive discovery proceedings ensued. On May 20, 2008, Lisle filed a first amended habeas petition. (ECF No. 72.)

On July 7, 2008, Lisle filed a motion for stay and abeyance. (ECF No. 78.) Respondents did not oppose that motion, and on August 4, 2008, this case was stayed pending Lisle's exhaustion of claims in state court. (ECF No. 81.)

On October 3, 2008, Lisle filed a second state-court habeas petition. (*See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. FFFF (ECF Nos. 189-1, 189-2, 189-3; *see also* Amended Petition for Writ of Habeas Corpus (Post-Conviction), Exh. GGGG (ECF Nos. 190-1, 190-2, 190-3, 190-4).) The state district court dismissed that petition, on procedural grounds, on August 25, 2009. (*See* Order, Exh. LLLL (ECF No. 192-4).) Lisle appealed, and the Nevada Supreme Court affirmed on February 24, 2012. (*See* Order of Affirmance, Exh. QQQQ (ECF No. 193-4).)

The stay of this case was lifted, upon a motion by Lisle, on December 12, 2012. (ECF No. 119.) On March 25, 2013, Lisle filed a second amended petition for writ of habeas corpus. (ECF No. 129.) On April 28, 2014, Lisle filed a third amended petition. (ECF No. 176.)

Respondents filed a motion to dismiss Lisle's third amended habeas petition on December 26, 2014. (ECF No. 182.) On May 12, 2015, Lisle's counsel—the FPD—filed an *ex parte* motion to withdraw (ECF No. 213 (sealed)), informing the court that they had

a conflict with respect to a potential argument for equitable tolling in response to Respondents' assertion of the statute of limitations defense. The Court ultimately denied the FPD's motion to withdraw, but appointed separate counsel to assert the equitable tolling argument for Lisle. (ECF Nos. 225 (sealed), 231 (sealed), 233.) Lisle's separate counsel filed memoranda of supplemental argument in response to the motion to dismiss the third amended petition. (ECF Nos. 240, 262.)

While the motion to dismiss the third amended petition was pending, Lisle filed a motion for leave to supplement his petition. (ECF No. 268.) On March 17, 2017, the Court granted that motion and directed Lisle to file a fourth amended petition including the new material. (ECF No. 284.) The Court denied the motion to dismiss the third amended petition, without prejudice, as moot.

Lisle filed his fourth amended petition for writ of habeas corpus (ECF No. 292), now the operative petition in this case, on April 21, 2017. The Court reads Lisle's fourth amended petition to assert the following discrete claims:

1. Lisle's federal constitutional rights were violated as a result of ineffective assistance of counsel. (Fourth Amended Petition (ECF No. 292) at 11-66.)

    A. Trial counsel were ineffective for failing to present available mitigating evidence at the penalty phase of Lisle's trial. (*Id.* at 12-57.)

    B. Trial counsel were ineffective at the guilt phase of Lisle's trial. (*Id.* at 57-65.)

    C. Lisle's federal constitutional rights were violated as a result of the cumulative effect of ineffective assistance of his counsel. (*Id.* at 65.)

    D. Lisle received ineffective assistance of counsel on his direct appeal and in his state post-conviction proceedings. (*Id.* at 65-66.)

2. Lisle's death sentence is in violation of the federal constitution, because "the statutory aggravating factors could not be applied constitutionally to make Mr. Lisle death-eligible." (*Id.* at 67-233.)

    A. "The kidnapping aggravating circumstance is unconstitutional as applied to Mr. Lisle." (*Id.* at 67-69.)

    B. "The 'previously convicted of another murder' aggravator is unconstitutional as applied to Mr. Lisle." (*Id.* at 69-229.)

C. "Counsel at all proceedings failed to raise the unconstitutionality of the aggravating factors applied at the Lusch proceedings." (*Id.* at 229.)

3. Lisle's federal constitutional rights were violated, in the guilt phase of his trial, as a result of the admission of evidence of other bad acts by Lisle. (*Id.* at 234-48.)

    A. Lisle's federal constitutional rights were violated as a result of admission of evidence regarding the Logan homicide. (*Id.* at 235-41.)

    B. Lisle's federal constitutional rights were violated as a result of admission of evidence "that Melcher was an 'enforcer' for Lisle." (*Id.* at 241-48.)

4. Lisle's federal constitutional rights were violated "because the trial court admitted prejudicial extrajudicial statements of Mr. Lisle's co-defendant Jerry Lopez." (*Id.* at 249-56.)

5. Lisle's federal constitutional rights were violated "because the trial court's instruction to Larry Prince to testify falsely corroded judicial integrity and rendered Mr. Lisle's proceedings fundamentally unfair." (*Id.* at 257-63.)

6. Lisle's federal constitutional rights were violated "because the trial court's striking of Janice Sykes's references to Jerry Lopez deprived Mr. Lisle of an opportunity to present mitigating evidence." (*Id.* at 264-68.)

7. Lisle's federal constitutional rights were violated "because trial court error and the ineffective assistance of counsel during voir dire contaminated Mr. Lisle's proceedings." (*Id.* at 269-78.)

    A. "Mr. Lisle's jury was death-biased." (*Id.* at 269-73.)

    B. "A death-biased juror was seated." (*Id.* at 273-75.)

    C. "The trial court erroneously denied trial counsel's motion for a sequestered jury." (*Id.* at 275-77.)

    D. "The errors in the voir dire process should be considered singly and cumulatively." (*Id.* at 277-78.)

    E. Lisle's counsel on direct appeal and in his state post-conviction proceedings "failed to investigate, develop, and present this claim." (*Id.* at 278.)

8. Lisle's federal constitutional rights were violated "because prosecutorial misconduct deprived Mr. Lisle of fundamentally fair proceedings." (*Id.* at 279-91.)

    A. "The State improperly expressed personal opinions during closing arguments." (*Id.* at 280-81.)

B. "The State improperly commented on the lack of mitigating evidence and the role of mitigating circumstances." (*Id.* at 281-83.)

    1. "The State made improper comments regarding Mr. Lisle's mitigation presentation." (*Id.* at 282.)

    2. "The State misstated the law regarding mercy." (*Id.* at 282-83.)

C. "The State improperly encouraged jurors to sentence Mr. Lisle based on passion and prejudice." (*Id.* at 283-85.)

D. "The State improperly disparaged trial counsel and Mr. Lisle." (*Id.* at 285-87.)

E. "The State argued the death penalty was necessary to prevent Mr. Lisle from killing again." (*Id.* at 287-89.)

F. "The State made a misrepresentation to the trial court." (*Id.* at 289.)

G. The State's misconduct should be considered singly and cumulatively. (*Id.* at 289-90.)

H. "Trial, appellate, and post-conviction counsel were ineffective for failing to challenge the extensive prosecutorial misconduct which occurred in Mr. Lisle's trial." (*Id.* at 290-91.)

9. Lisle's federal constitutional rights were violated "because Mr. Lisle was forced to wear a stun belt and shackles during the guilt and penalty phases of his trial." (*Id.* at 292-96.)

A. "The trial court erred in failing to conduct a hearing to determine whether an essential state interest necessitated the use of a stun belt and shackles." (*Id.* at 293-95.)

B. "Trial counsel were ineffective for failing to object to the restraints." (*Id.* at 295.)

C. "Appellate and post-conviction counsel were ineffective in failing to raise this claim." (*Id.* at 295-96.)

10. Lisle's federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to sever the charge of being an ex-felon in possession of a firearm from his first-degree murder charge." (*Id.* at 297-98.)

11. Lisle's federal constitutional rights were violated "because the trial court erroneously admitted the out-of-court testimony of a witness who inculpated Mr. Lisle." (*Id.* at 299-306.)

12. Lisle's federal constitutional rights were violated "because the State's failure to disclose material exculpatory and impeachment evidence deprived Mr. Lisle of fundamentally fair proceedings." (*Id.* at 307-28.)

A. "The State failed to disclose material impeachment evidence related to its witness Adam Evans." (*Id.* at 308-16.)

B. "The State failed to disclose material impeachment evidence related to its witness John Melcher." (*Id.* at 317-22.)

C. "The State failed to turn over handwritten notes of a conversation with Mr. Melcher." (*Id.* at 323.)

D. "The CCDA's 'open file' policy failed to comply with constitutional discovery obligations." (*Id.* at 323-25.)

E. "The State failed to disclose cash payments made to witnesses." (*Id.* at 325-28.)

13. Lisle's federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to call John Melcher's attorney to testify." (*Id.* at 329-31.)

14. Lisle's federal constitutional rights were violated "because the trial court did not strike the testimony of John Melcher because the State had instructed Mr. Melcher not to speak to Mr. Lisle's attorneys." (*Id.* at 332-34.)

15. Lisle's federal constitutional rights were violated "because the trial court erroneously instructed the jury at the guilt and penalty phase proceedings." (*Id.* at 335-56.)

A. The trial court improperly instructed the jury in the guilt phase of the trial. (*Id.* at 335-51.)

   1. The trial court improperly instructed the jury regarding the elements of first-degree murder. (*Id.* at 335-41.)

   2. The trial court improperly instructed the jury regarding reasonable doubt. (*Id.* at 342-43.)

   3. The trial court failed "to give a curative instruction after the erroneous introduction of prior bad act evidence." (*Id.* at 344.)

   4. The trial court "failed to properly instruct the jury on the theories of aiding and abetting and conspiracy to commit murder." (*Id.* at 344-47.)

   5. The trial court did not properly instruct the jury regarding possession of a deadly weapon. (*Id.* at 347-49.)

   6. The trial court gave an "equal and exact justice instruction," which "improperly minimized the State's burden of proof." (*Id.* at 349-51.)

B. The trial court improperly instructed the jury in the penalty phase of the trial. (*Id.* at 351-56.)

1. The trial court gave an "anti-sympathy" instruction. (*Id.* at 351-53.)

2. The trial court failed to instruct the jury "regarding the limited use of prior bad act evidence." (*Id.* at 353-56.)

16. Lisle's federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to sever his trial from that of his co-defendant." (*Id.* at 357-67.)

17. Lisle's federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to compel discovery of the State's written notes of an interview with its key witness John Melcher." (*Id.* at 368-70.)

18. Lisle's federal constitutional rights were violated "because the trial court erroneously struck Darlene Falvey's testimony, depriving Mr. Lisle of an opportunity to rebut evidence of aggravating circumstances." (*Id.* at 371-77.)

19. Lisle's federal constitutional rights were violated "because the State improperly referred to the fact that another jury had sentenced Mr. Lisle to death." (*Id.* at 378-81.)

20. Claim 20 reiterates claims made elsewhere in the Petition.

21. Lisle's federal constitutional rights were violated "by the failure to submit all of the elements of capital eligibility to the grand jury or to a court for a probable cause determination." (*Id.* at 387-88.)

22. Lethal injection is cruel and unusual punishment. (*Id.* at 389-414.)

   A. "Lethal injection is unconstitutional in all circumstances." (*Id.* at 389-98.)

   B. "Lethal injection in Nevada is unconstitutional." (*Id.* at 398-414.)

23. Lisle's federal constitutional rights were violated "because Mr. Lisle's capital trial, sentencing, and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election." (*Id.* at 415-22.)

24. Lisle's federal constitutional rights were violated "because the state courts failed to provide Mr. Lisle with the effective assistance of counsel during the appellate and post-conviction stages of his proceedings." (*Id.* at 423-32.)

25. Lisle's death sentence is invalid under the federal constitution "because the Nevada capital punishment system operates in an arbitrary and capricious manner." (*Id.* at 433-36.)

26. Lisle's death sentence is invalid under the federal constitution "because the death penalty is cruel and unusual punishment in all circumstances." (*Id.* at 437-38.)

27. "Mr. Lisle's sentence violates the International Covenant on Civil and Political Rights." (*Id.* at 439-40.)

28. Lisle's federal constitutional rights were violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by state officials and witnesses, and the systematic deprivation of Mr. Lisle's right to the effective assistance of counsel." (*Id.* at 441-42.)

29. Lisle's conviction and death sentence are invalid under the federal constitution "because he may become incompetent to be executed." (*Id.* at 443.)

30. Lisle's "trial, conviction, sentence, appeal and all post-conviction proceedings are and were fundamentally unfair," and in violation of the federal constitution, "because severe mental and physical illness rendered him incompetent during those proceedings," and because of "maltreatment while incarcerated." (*Id.* at 444-64.)

    A. "Mr. Lisle had known mental and physical issues . . . before his trial." (*Id.* at 445-48.)

    B. "Circumstances of Mr. Lisle's confinement at Ely State Prison have exacerbated Mr. Lisle's physical and mental health issues." (*Id.* at 448-63.)

31. Lisle's federal constitutional rights were violated "because Mr. Lisle's attorneys failed to object to the admission of evidence during the penalty phase of his trial which recounted events that did not result in a criminal conviction and that occurred before Mr. Lisle reached the age of eighteen." (*Id.* at 465-68.)

32. Lisle's federal constitutional rights were violated "because the State committed prosecutorial misconduct in presenting testimony that improperly bolstered its witnesses; the trial court erred in allowing that testimony; and trial counsel provided ineffective assistance in failing to object to that testimony, move to strike that testimony, and move for a mistrial following the jury's exposure to that testimony." (*Id.* at 469-78.)

33. Lisle's federal constitutional rights were violated "because the trial court erroneously admitted hearsay evidence of an alleged prior bad act committed by Mr. Lisle." (*Id.* at 479-85.)

34. Lisle's federal constitutional rights were violated "because the trial court erred in allowing the State to present evidence of Mr. Lisle's gang membership; trial counsel were ineffective when they failed to object to evidence of Mr. Lisle's gang membership and even elicited some evidence about that issue themselves; and the State committed misconduct when it elicited evidence about Mr. Lisle's gang membership in violation of the trial court's pretrial order." (*Id.* at 486-94.)

35. Lisle's federal constitutional rights were violated "because trial counsel rendered constitutionally deficient assistance when they failed to cover their client's tattoos for trial and failed to object to the State's gratuitous and inflammatory references to the tattoos; and because the trial court erred in admitting State's Exhibit 31." (*Id.* at 495-501.)

36. Lisle's federal constitutional rights were violated because "the trial court erroneously admitted the testimony of Edward Ortiz, and trial counsel rendered deficient performance when they failed to request a limiting instruction on the jury's use of that testimony, and the trial court erroneously admitted the testimony of Jeff Kurtz." (*Id.* at 502-09.)

On June 20, 2017, Respondents filed their motion to dismiss the fourth amended petition. (ECF No. 293.) Lisle filed an opposition to that motion on August 28, 2017. (ECF No. 298.) In addition, the Court considers, with respect to the motion to dismiss the fourth amended petition, the memoranda of supplemental argument filed by Lisle's separate counsel in response to the motion to dismiss the third amended petition. (ECF Nos. 240, 262.) On August 28, 2017, Lisle also filed a motion for leave to conduct discovery (ECF No. 300), a motion for medical examination and site inspection (ECF No. 305), and a motion for evidentiary hearing (ECF No. 303). On October 9, 2017, Respondents filed a reply to Lisle's opposition to the motion to dismiss (ECF No. 309), and oppositions to Lisle's three motions (ECF Nos. 310, 311, 312). On October 30, 2017, Lisle filed replies in support of his motions. (ECF Nos. 314, 315, 316.)

## III. Discussion

### A. Statute of Limitations

#### 1. Legal Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a one-year statute of limitations for federal habeas petitions filed by prisoners challenging state convictions or sentences; the statue provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

13

recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2).

A habeas petitioner is entitled to equitable tolling of the AEDPA statute of limitations if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

**2.     Expiration of the Limitations Period**

Lisle's conviction became final on October 5, 1998, when the United States Supreme Court denied his petition for certiorari. *See Rhines v. Weber*, 544 U.S. 269, 272 (2005).

Lisle filed his first state-court petition for writ of habeas corpus thirty-eight days later, on November 12, 1998, tolling the AEDPA limitations period under 28 U.S.C. § 2244(d)(2). Absent any applicable equitable tolling, those thirty-eight days ran against the one-year limitations period.

Lisle's first state habeas action was completed, and the statutory tolling relative to that action ceased, when the Nevada Supreme Court issued its remittitur, after affirming the denial of Lisle's petition, on August 5, 2002.

It was then 380 days later when Lisle mailed his federal habeas petition to this Court for filing, on August 20, 2003. (ECF No. 1.) That 380 days also ran against the one-year limitations period, unless equitable tolling is warranted during that period.

///

1    Therefore, absent equitable tolling, a total of 418 days ran against the one-year

2    AEDPA limitations period before Lisle filed his original habeas petition. Without equitable

3    tolling, Lisle's original habeas petition was filed fifty-three days late and would be barred

4    by the statute of limitations.

5    Beyond that, Lisle's first amended petition was filed more than four and a half years

6    later, on May 20, 2008. (ECF No. 72.) His second amended petition was filed more than

7    four-and-a-half years after that, on March 25, 2013. (ECF No. 129.) About a year later,

8    on April 28, 2014, Lisle filed his third amended petition. (ECF No. 176.) Finally, another

9    three years later, Lisle filed his fourth amended petition. (ECF No. 292.)

10                        **3.    Lisle's Waiver Argument**

11    Lisle argues that Respondents waived the statute of limitations defense because

12    they did not raise it until they filed their motion to dismiss Lisle's third amended petition

13    on December 26, 2014. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 6-14.)

14    Specifically, Lisle argues that, under Federal Rule of Civil Procedure 12(g)(2),

15    Respondents waived the argument that his original petition was untimely by not asserting

16    it in a motion to dismiss Lisle's original petition, which motion was filed on October 4, 2004

17    (ECF No. 43). (*See id.*)

18    The Court need not reach this issue, and declines to do so, as the Court

19    determines that Lisle's original petition was timely filed as a result of equitable tolling.

20    (*See infra* section III(A)(4).)

21                  **4.    Equitable Tolling from the Completion of Lisle's First State
                            Habeas Action to the Appointment of Counsel in His Federal**
22                  **Habeas Action**

23    Lisle argues, and he points to evidence supporting his argument, that equitable

24    tolling is warranted because of conditions of his confinement at Ely State Prison ("ESP"),

25    because of physical and mental health problems, and because he was abandoned by his

26    counsel. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 15-45.) The Court finds

27    this argument to be meritorious, and will grant such equitable tolling.

28    ///

Lisle makes a compelling showing that, following the completion of his state habeas action, and until the time that counsel was appointed for him in this federal habeas action, he suffered from mental illness, he suffered from physical illness, he was imprisoned under unusually restrictive conditions, and he was essentially abandoned by his counsel with respect to the initiation and litigation of his federal habeas action. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 15-45; Supplement to Petitioner's Opposition to Motion to Dismiss (ECF No. 240).) Taken together, the Court determines that these circumstances were extraordinary and prevented Lisle from complying with the AEDPA statute of limitations in initiating this action. *See Holland*, 560 U.S. at 649 (regarding standard for equitable tolling); *Ramirez*, 571 F.3d at 997 (same).

The material presented by Lisle in opposition to the motion to dismiss shows that during the time at issue here—August 2002 to January 2004—Lisle suffered from significant physical and mental health issues. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 15-40.) Furthermore, during this time he was incarcerated in extremely restricted solitary confinement at ESP. (*See id.*) In this Court's view, Lisle could not have been expected, under these circumstances, to timely initiate this action.

Furthermore, during the time in question, despite Lisle's inability to initiate a federal habeas action on his own behalf, the attorneys who represented Lisle in his first state habeas action abandoned him, and an attorney at the FPD's office, who had represented Lisle previously, offered no help. Soon after Lisle's state habeas case was completed, his state habeas counsel informed him of that and indicated that a federal action would be the next step; however, Lisle's state habeas counsel did not instruct Lisle what he needed to do to initiate a federal action, and they did not make clear to Lisle that they no longer would represent him. Then, despite uncertainty whether Lisle was still represented by this state habeas counsel, his state habeas counsel ultimately signed Lisle's skeletal original federal petition, which was filed for him in an untimely manner. Meanwhile, during the time in question, before the AEDPA limitations period ran out, Lisle wrote to an attorney who had represented him at trial and who was then at the office of the FPD, seeking help,

but received no assistance from her. (*See* Supplement to Petitioner's Opposition to Motion to Dismiss (ECF No. 240).)

The Court finds that these were extraordinary circumstances, and they prevented Lisle from initiating this action in a timely manner. The Court will grant Lisle equitable tolling from August 5, 2002, the date on which his state habeas action was completed, to January 22, 2004, the date on which the FPD was appointed to represent Lisle in this action.

This is not to say that the Court would necessarily find any one of the factors affecting Lisle—his mental illness, his physical illness, the conditions of his confinement, the actions of his state habeas counsel and the FPD—as sufficient, in itself, to warrant equitable tolling. However, taking these factors together, the Court concludes that equitable tolling is warranted for this period of time in this case.

### 5. Equitable Tolling from the Appointment of Counsel in This Action to the Date of the Supreme Court's Decision in Mayle

Next, the Court determines that equitable tolling is warranted from when counsel was appointed for him, on January 22, 2004, until June 23, 2005, the date of the Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005).

Lisle's original habeas petition in this case was filed on August 20, 2003. (ECF No. 1.) In that petition, filed on a court form, in the section where the petition was to state his first ground for relief, Lisle's petition stated only: "See attached pleadings. Exs. 3, 4." (*See* Petition for Writ of Habeas Corpus (ECF No. 1) at 3.) Exhibits 3 and 4, attached to the petition, were copies of Lisle's opening brief and reply brief on the appeal in his first state habeas action. Lisle's original petition, then, was skeletal, raising—as this Court reads it—only the same claims that he raised on the appeal in his first state habeas action.

Then, as Lisle points out in his opposition to the motion to dismiss (*see* Opposition to Motion to Dismiss (ECF No. 298) at 56-76), after counsel was appointed for him, the Court's scheduling orders set deadlines related to discovery proceedings and for Lisle to file an amended petition. Lisle argues that he relied upon the Court's scheduling orders

in determining when to file his amended petition, and he was, thereby, lulled into filing his amended petition nearly five years after he filed his initial petition. (*See id.*) Instructions from a court do not serve as a basis for equitable tolling unless the court "affirmatively misled" the petitioner. *Ford v. Pliler*, 590 F.3d 782, 786-87 (9th Cir. 2009). The Court did not affirmatively mislead Lisle. As Lisle acknowledges, the Court's scheduling orders were based on procedures in capital cases that were developed before the AEDPA statute of limitations was enacted. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 59 (recognizing that the procedures were adopted in 1992).) The scheduling orders made no mention of the statute of limitations, and did not indicate that they were meant to affect the application of the statute of limitations in any manner. The scheduling orders granted leave for Lisle to conduct discovery, set time limits for Lisle to do investigation and conduct discovery, and set time limits for Lisle to file his amended petition. Those orders did not make any statement about, or have any bearing on, the operation of the statute of limitations. Lisle has not made any factual allegation, or proffered any evidence, suggesting otherwise.

Nevertheless, the Court recognizes that before the Supreme Court decided *Mayle*, there was uncertainty in the law regarding how an amended petition related back to an original petition, with respect to the operation of the statute of limitations. For example, on August 9, 2004, in the *Mayle* case itself, *Felix v. Mayle*, 379 F.3d 612 (9th Cir. 2004), the Ninth Circuit Court of Appeals held that new claims in an amended petition related back to the filing of the original petition and were not time-barred, regardless of whether or not the new claims were related to claims in the original petition. The uncertainty in that regard was not cleared up until June 23, 2005, when the United States Supreme Court ruled, in *Mayle*, that claims in an amended habeas petition do not relate back to the filing of the original petition if they assert new grounds for relief supported by facts that differ in both time and type from those set forth in the original petition. *See Mayle*, 545 U.S. at 650.

///

In this case, given the skeletal nature of Lisle's original petition, and in light of the uncertainty in the law at the time regarding the relation back of claims in an amended habeas petition to those in an earlier petition, it is not surprising that Lisle's counsel did not file Lisle's amended petition before *Mayle* was decided by the Supreme Court. The Court determines that these were extraordinary circumstances that led Lisle's counsel to delay in filing his amended petition. Under these circumstances, equitable tolling is warranted from the appointment of the FPD on October 15, 2003, to the date of the *Mayle* decision, June 23, 2005.

### 6.    No Equitable Tolling after June 23, 2005

With the benefit of the equitable tolling discussed above, as of June 23, 2005, thirty-eight days had run against the one-year limitations period. Without any further tolling, the limitations period would lapse on May 16, 2006.

The Court finds that Lisle does not make any colorable argument that equitable tolling is warranted after June 23, 2005, the date of the *Mayle* decision.

The *Mayle* decision cleared up any uncertainty regarding the relation back of claims in an amended habeas petition to the filing of an earlier petition. The Court finds meritless Lisle's argument that he was misled by court orders—court orders that did not mention the statute of limitations or purport to have any effect on its application—after the Supreme Court's *Mayle* decision, such that he was compelled to continue to delay in filing his amended petition.

The Court also finds meritless Lisle's argument that delays in discovery proceedings, alleged by Lisle to have been caused by Respondents, the Clark County District Attorney's office, and the Las Vegas Metropolitan Police Department, led to the late filing of his amended petition. (*See* Opposition to Motion to Dismiss (ECF No. 232) at 127-29.) Nothing prevented Lisle from filing his amended petition before the completion of the discovery. The scheduling orders set a deadline for the filing of the amended petition that was after the completion of discovery, but there was no order that the

///

amended petition could not have been filed sooner. There is no basis shown for equitable tolling after June 23, 2005.

Also, the Court finds that after the appointment of counsel for Lisle, equitable tolling is not warranted on account of Lisle's physical and mental illness, or on account of prison conditions. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 47-56.) Those circumstances had no impact on his counsel's ability to draft and file his amended petition.

Furthermore, the Court is not persuaded by the notion that staffing issues at the office of the FPD constituted extraordinary circumstances preventing the timely filing of the amended petition. (*See id.* at 122-24.)  The FPD's office may have staffing challenges no different from any than other organizations. However, it is plain from the history of this case—most importantly, the record regarding the discovery litigation in 2004, 2005, and 2006—that the FPD had sufficient staffing and resources to comply with the statute of limitations.

**B.    Exhaustion of State Court Remedies**

**1.    Legal Standards**

A federal court may not grant relief on a habeas corpus claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is designed to give state courts the initial opportunity to correct alleged constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present that claim to the State's highest court, and must give that court the opportunity to address and resolve it. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The "fair presentation" requirement is satisfied when the claim has been presented to the highest state court by describing the operative facts and the legal theory upon which the federal claim is based. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir.1982). To fairly present a federal constitutional claim to the state court, the petitioner must alert the court to the fact that he asserts a claim under the United

///

States Constitution. *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Duncan*, 513 U.S. at 365-66).

### 2. Nevada Supreme Court's Mandatory Review under NRS § 177.055

With respect to certain of his claims—Claims 2, 9, 15B, 16, 19 and 31—Lisle argues that the Nevada Supreme Court addressed his claims, on his direct appeal, as part of its mandatory review under NRS § 177.055. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 130-34.) NRS § 177.055 requires the Nevada Supreme Court to consider: whether the evidence supported the finding of the aggravating circumstances; whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and whether the death sentence was excessive. Lisle argues that, by virtue of this provision, the Nevada Supreme Court ruled upon Claims 2, 9, 15B, 16, 19 and 31.

To show that a claim was exhausted on account of the Nevada Supreme Court's mandatory review under NRS § 177.055, Lisle must show that the claims at issue were "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer v. Schriro*, 463 F.3d 934, 953-56 (9th Cir. 2006).

The Court determines that Lisle does not show that Claims 2, 9, 15B, 16, 19, and 31 were clearly encompassed within the scope of NRS § 177.055, and Lisle does not show them to have been "readily apparent" in the record reviewed by the Nevada Supreme Court. The Court finds that these claims were not exhausted on Lisle's direct appeal by virtue of the Nevada Supreme Court's mandatory review under NRS § 177.055.

### 3. Anticipatory Default

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate the state-law procedural bar of an unexhausted claim and to treat such a claim as subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now

bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case, and, in particular, the rulings of the state courts in Lisle's second state habeas action, it is plain that Lisle's unexhausted claims would be ruled procedurally barred in state court if Lisle were to return to state court to attempt to exhaust those claims. Therefore, the anticipatory default doctrine applies, and the Court considers Lisle's unexhausted claims to be technically exhausted, but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

### C. Procedural Default

#### 1. Legal Standards

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with the State's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. *Coleman*, 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice,

but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15 (citing *Coleman*, 501 U.S. at 746-47). The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8.

### 2. The Procedural Default in This Case

On Lisle's direct appeal and the appeal in his first state habeas action, the Nevada Supreme Court addressed his claims on their merits. (*See Lisle*, 941 P.2d 459 (opinion on direct appeal); Order of Affirmance, Exh. EEEE (ECF No. 188-5) (opinion on appeal in first state habeas action).) Therefore, claims asserted by Lisle on his direct appeal and on the appeal in his first state habeas action were not procedurally barred in state court and are not subject to the procedural default doctrine in this case.

On Lisle's appeal in his second state habeas action, however, the Nevada Supreme Court ruled that the claims he asserted for the first time in state court in that action were barred by NRS §§ 34.726 (statute of limitations), 34.810 (successive petitions), and 34.800 (laches). (*See* Order of Affirmance, Exh. QQQQ (ECF No. 193-4).) Therefore, claims exhausted by Lisle in state court only in his second state habeas action are subject to the procedural default doctrine.

///

### 3.    Adequacy of the State Procedural Bars

Lisle argues that the state procedural rules applied to bar his claims in his second state habeas action were not adequate to support application of the procedural default doctrine. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 154-57, 203-04.)

A state procedural rule is "adequate" if it was "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. U.S. Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted); *see also Ford v. Georgia*, 498 U.S. 411, 424 (1991) (citation and internal quotation marks omitted) (state procedural rule adequate if "firmly established and regularly followed by the time as of which it is to be applied"); *Lambright v. Stewart*, 241 F.3d 1201, 1203 (9th Cir. 2001).

In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the Ninth Circuit Court of Appeals established a burden-shifting test for analyzing adequacy. Under *Bennett*, the state carries the initial burden of pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* If the petitioner meets this burden, "the ultimate burden" of proving the adequacy of the procedural rule rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id.*; *see also King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006).

Here, Respondents meet their initial burden under *Bennett* by asserting that the Nevada Supreme Court affirmed the dismissal of Lisle's second state habeas action based on independent and adequate state procedural grounds. (*See* Motion to Dismiss (ECF No. 293) at 21; Order of Affirmance, Exh. QQQQ (ECF No. 193-4).) The Nevada Supreme Court ruled that the claims Lisle asserted for the first time in state court in his second state habeas action were barred by NRS §§ 34.726 (statute of limitations), 34.810

24

(successive petitions) and 34.800 (laches). (*See* Order of Affirmance, Exh. QQQQ (ECF No. 193-4).) Lisle argues that NRS §§ 34.726 and 34.810 were inadequate to support application of the procedural default doctrine. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 154-57, 203-04.)

Regarding NRS §§ 34.726 and 34.800, the Nevada statute of limitations and laches rule, the Ninth Circuit Court of Appeals has held those rules to be adequate to support application of the procedural default defense. *See Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996); *Loveland v. Hatcher*, 231 F.3d 640, 642-63 (9th Cir. 2000). The Ninth Circuit Court of Appeals has never ruled NRS §§ 34.726 or 34.800 to be inadequate. The Court finds that Lisle does not show NRS §§ 34.726 or 34.800 to be other than clear, consistently applied and well-established. NRS §§ 34.726 and 34.800 are adequate to support the procedural default defense asserted by Respondents.

Regarding NRS § 34.810, Nevada's rule regarding successive petitions, Lisle points out that the Ninth Circuit Court of Appeals has held that rule to be inadequate. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 156-57, 203-04.) Lisle appropriately cites *Riley v. McDaniel*, 786 F.3d 719 (9th Cir. 2015); *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002); and *Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir. 2001). (*Id.*) Respondents have not carried their burden of demonstrating that the procedural rule has become adequate since the time of the defaults in those cases. The Court does not apply the procedural default doctrine to any of Lisle's claims based on the Nevada Supreme Court's reliance on NRS § 34.810 in affirming the dismissal of his second state habeas action.

### D. Claim-Specific Analysis

#### 1. Claim 1

In Claim 1 of his fourth amended petition, Lisle claims that his federal constitutional rights were violated as a result of ineffective assistance of counsel. (Fourth Amended Petition (ECF No. 292) at 11-66.) In subpart A of Claim 1, Lisle claims that his trial counsel were ineffective for failing to present available mitigating evidence at the penalty phase

of his trial. (*Id.* at 12-57.) In subpart B, Lisle claims that his trial counsel were ineffective at the guilt phase of his trial because his trial counsel lacked resources, because they failed to object to the State's bolstering of Adam Evans's testimony, because they failed to impeach Evans with a prior inconsistent statement, because they failed to object to prosecutorial misconduct, because they failed to object to erroneous jury instructions, because they were ineffective during voir dire, and because they failed to litigate the State's interference with access to witness John Melcher. (*Id.* at 57-65.) In subpart C, Lisle claims that his federal constitutional rights were violated as a result of the cumulative effect of ineffective assistance of his counsel. (*Id.* at 65.) And, in subpart D, Lisle claims that he received ineffective assistance of counsel on his direct appeal and in his state post-conviction proceedings. (*Id.* at 65-66.)

With respect to the application of the statute of limitations to Claim 1, Lisle argues that he is entitled to statutory and equitable tolling of the limitations period as it relates to Claim 1. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 91-97.) However, the Court finds Lisle's arguments in this regard to be without merit.

Regarding his argument for statutory tolling under 28 U.S.C. § 2244(d)(1)(D) (the "limitation period shall run from . . . the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence"), Lisle does not make any showing, with respect to any particular claim in Claim 1, of the date on which he discovered the factual predicate of the claim, or the reason why the factual predicate could not have been discovered earlier.

And, regarding Lisle's argument for equitable tolling specifically regarding Claim 1, Lisle does not make any connection between his mental or physical health, or his conditions of confinement, and his counsel's ability to plead any of the claims in Claim 1 on his behalf, particularly during the period after June 23, 2005. The application of the statute of limitations to Claim 1 turns, then, on the question of what claims within Claim 1 relate back to Lisle's original petition (ECF No. 1), which, by virtue of equitable tolling, was timely filed. In *Mayle*, the Supreme Court held that "[s]o long as the original and

amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650, 664.

In his original petition, in the portion of the petition in which the grounds for relief are set forth, as Ground 1, Lisle wrote: "See attached pleadings. Exs. 3, 4." (Petition for Writ of Habeas Corpus (ECF No. 1) at 3.) Exhibits 3 and 4, attached to the original petition, were Lisle's opening and reply briefs on the appeal in his first state habeas action. Therefore, the Court reads Lisle's original petition to include the claims raised on the appeal in his first state habeas action.

In addition, Lisle argues that his original petition should be read to also include the claims he raised on his direct appeal, because he attached to his original petition, as Exhibit 1 to that petition, a copy of the Nevada Supreme Court's opinion on his direct appeal. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) This argument is without merit. The form that Lisle used to draft his petition called for the petitioner to attach copies of state-court decisions, as part of the background information regarding the petition. (*See* Petition for Writ of Habeas Corpus (ECF No. 1) at 1.) Nothing from that exhibit was incorporated into the grounds for relief in the petition. (*See id*. at 3-8.) Moreover, in his original petition, Lisle specifically stated that the claims asserted in that petition were exhausted in state court in his first state habeas action, not on his direct appeal. (*See id*. at 3-4.) Lisle's original petition cannot be read to assert the claims that he asserted on his direct appeal to the Nevada Supreme Court.

Applying *Mayle*, therefore, the Court determines that the following claims in Claim 1 relate back to Lisle's original petition, because his original petition set forth the core operative facts upon which these claims are based; these claims in Claim 1 are not barred by the statute of limitations:

///

-   the claim in Claim 1 asserting ineffective assistance of trial counsel in the guilt phase of the trial, for failing to object to the prosecutor's expressions of personal opinion and aligning of himself with the jury, in closing arguments;

-   the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's expressions of personal opinion and aligning of himself with the jury, in closing arguments;

-   the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that allegedly improperly shifted to the defense the burden to prove that mitigating circumstances did not outweigh aggravating circumstances;

-   the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that the jury should "send a message;" and

-   the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that Lisle would present a danger in the future.

Furthermore, as these claims in Claim 1 were asserted on Lisle's appeal in his first state habeas action, they are exhausted and not subject to the procedural default doctrine.

The remainder of the claims in Claim 1 do not relate back to Lisle's original petition, are barred by the statute of limitations, and will be dismissed on that ground.

Moreover, as the remainder of the claims in Claim 1—the claims not asserted by Lisle on the appeal in his first state habeas action—were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action, they are also potentially barred by the procedural default doctrine. However, with respect to claims of ineffective assistance of trial counsel, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*. That determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims in Claim 1 not exhausted by Lisle on the appeal in his first state habeas action.

///

///

///

### 2.    Claim 2

In Claim 2 of his fourth amended habeas petition, Lisle challenges the aggravating factors that supported imposition of the death penalty in his case, asserting that they are unconstitutional as applied in his case. (Fourth Amended Petition (ECF No. 292) at 67-233.)

Citing *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013), Lisle argues that the statute of limitations bar should be excused with respect to Claim 2 because in that claim he essentially contends that he is actually innocent of the death penalty. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 14-15, 97-99.)

A habeas petitioner can overcome a procedural default or a statute of limitations bar, allowing consideration of the merits of the otherwise barred claim, by showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 324-29 (1995); *see also McQuiggin*, 569 U.S. at 399. To demonstrate actual innocence to overcome a procedural bar under *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. By means of that evidence, and in light of all the evidence in the case, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327; *see also id.* at 329 ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."); *House v. Bell*, 547 U.S. 518, 538 (quoting *Schlup*, 513 U.S. at 327-28) (regarding evidence to be considered). "Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329). "The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538. Meeting this standard "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in

the result of the trial without the assurance that the trial was untainted by constitutional error," warranting "a review of the merits of the constitutional claims[.]" *Schlup*, 513 U.S. at 317.

Lisle contends in Claim 2 that he can show that he is "actually innocent of the death penalty," because the two aggravating circumstances found by the jury are invalid. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 14-15, 97-99; *see also* Fourth Amended Petition (ECF No. 292) at 67-233.) The two aggravating circumstances found by the jury were: (1) "[t]he murder was committed by a person who was previously convicted of another murder," and (2) "[t]he murder was committed while the person was engaged in the commission of or an attempt to commit a Kidnapping in the First Degree." (*See* Special Verdict, Exh. HH (ECF No. 186-8).)

The validity of Lisle's other murder conviction (for the Logan murder), which was the basis for one of the two aggravating circumstances found in this case, is at issue in Lisle's other capital habeas corpus action in this Court, Case No. 2:03-cv-1005-JCM-CWH. Therefore, the Court determines that Lisle's contention that he can overcome the procedural default and statute of limitations bars of this claim by showing his actual innocence of the death penalty should not be addressed at this time, on this motion to dismiss. The Court will deny the motion to dismiss as to this this claim, without prejudice to Respondents asserting the statute of limitations and procedural default defenses to it in their answer.

### 3. Claim 3

In Claim 3, Lisle contends that his federal constitutional rights were violated, in the guilt phase of his trial, as a result of the admission of evidence of other bad acts. (Fourth Amended Petition (ECF No. 292) at 234-48.) In subpart A of Claim 3, Lisle claims that his federal constitutional rights were violated as a result of admission of evidence regarding the Logan homicide. (*Id.* at 235-41.) In subpart B of Claim 3, Lisle claims that his federal constitutional rights were violated as a result of admission of evidence "that Melcher was an 'enforcer' for Lisle." (*Id.* at 241-48.)

With respect to the statute of limitations, Lisle argues that the claims in Claim 3 relate back to his original petition because he raised them on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) However, as is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 3 do not relate back to Lisle's original petition. All of Claim 3 is barred by the statute of limitations.

With respect to the procedural default doctrine, Respondents concede that Lisle raised Claim 3A on his direct appeal, and that claim is, therefore, not procedurally defaulted. (*See* Motion to Dismiss (ECF No. 293) at 22.) Lisle did not, however, raise Claim 3B on either his direct appeal or the appeal in his first state habeas action, so that claim is subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 3B, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 3B. Regarding the remainder of Claim 3B—those claims not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

Therefore, Claim 3B, other than claims of ineffective assistance of trial counsel, is dismissed on both statute of limitations grounds and procedural default grounds; Claim 3A and the claims of ineffective assistance of trial counsel in Claim 3B are dismissed on statute of limitations grounds.

///

///

### 4. Claim 4

In Claim 4, Lisle claims that his federal constitutional rights were violated "because the trial court admitted prejudicial extrajudicial statements of Mr. Lisle's co-defendant Jerry Lopez." (Fourth Amended Petition (ECF No. 292) at 249-56.)

Regarding the statute of limitations, Lisle argues that Claim 4 relates back to his original petition because he raised the claim on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 4 do not relate back to Lisle's original petition. All of Claim 4 is barred by the statute of limitations.

Furthermore, as none of the claims in Claim 4 were asserted by Lisle on either his direct appeal or the appeal in his first state habeas action, they are subject to the procedural default doctrine.

All of Claim 4 is dismissed on both statute of limitations grounds and procedural default grounds.

### 5. Claim 5

In Claim 5, Lisle claims that his federal constitutional rights were violated "because the trial court's instruction to Larry Prince to testify falsely corroded judicial integrity and rendered Mr. Lisle's proceedings fundamentally unfair." (Fourth Amended Petition (ECF No. 292) at 257-63.)

With respect to the statute of limitations, here again, Lisle argues that Claim 5 relates back to his original petition, because he raised the claim on his direct appeal to the Nevada Supreme Court and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that

Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 5 do not relate back to Lisle's original petition. All of Claim 5 is barred by the statute of limitations.

Furthermore, as none of the claims in Claim 5 were asserted by Lisle on either his direct appeal or the appeal in his first state habeas action, they are subject to the procedural default doctrine.

All of Claim 5 is dismissed on both statute of limitations grounds and procedural default grounds.

### 6. Claim 6

In Claim 6, Lisle contends that his federal constitutional rights were violated "because the trial court's striking of Janice Sykes's references to Jerry Lopez deprived Mr. Lisle of an opportunity to present mitigating evidence." (Fourth Amended Petition (ECF No. 292) at 264-68.)

As with Claims 3, 4, and 5, Lisle argues that Claim 6 relates back to his original petition, because he raised the claim on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 6 do not relate back to Lisle's original petition. All of Claim 6 is barred by the statute of limitations.

The claim in Claim 6 was, however, asserted by Lisle on his direct appeal, and it is not procedurally defaulted.

Claim 6 is dismissed on statute of limitations grounds.

///

///

33

### 7.    Claim 7

In Claim 7, Lisle claims that his federal constitutional rights were violated "because trial court error and the ineffective assistance of counsel during voir dire contaminated Mr. Lisle's proceedings." (Fourth Amended Petition (ECF No. 292) at 269-78.) In subpart A of Claim 7, Lisle claims that the jury was "death-biased." (*Id.* at 269-73.) In subpart B, Lisle claims that "[a] death-biased juror was seated." (*Id.* at 273-75.) In subpart C, Lisle claims that "[t]he trial court erroneously denied trial counsel's motion for a sequestered jury." (*Id.* at 275-77.) In subpart D, Lisle claims that "[t]he errors in the voir dire process should be considered singly and cumulatively." (*Id.* at 277-78.) And, in subpart E, Lisle claims that his counsel on direct appeal and in his state post-conviction proceedings "failed to investigate, develop, and present this claim." (*Id.* at 278.)

Lisle does not make any argument, specific to any of the claims in Claim 7, that any of these claims relate back to his original petition. The claims in Claim 7 do not relate back to Lisle's original petition. All of Claim 7 is barred by the statute of limitations.

Furthermore, as none of the claims in Claim 7 were asserted by Lisle on either his direct appeal or the appeal in his first state habeas action, they are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 7, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 7.

Therefore, all of Claim 7, other than claims of ineffective assistance of trial counsel, is dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 7 are dismissed on statute of limitations grounds.

///

///

34

### 8. Claim 8

In Claim 8, Lisle claims that his federal constitutional rights were violated because of prosecutorial misconduct. (Fourth Amended Petition (ECF No. 292) at 279-91.) In subpart A of Claim 8, Lisle claims: "The State improperly expressed personal opinions during closing arguments." (*Id.* at 280-81.) In subpart B, Lisle claims: "The State improperly commented on the lack of mitigating evidence and the role of mitigating circumstances." (*Id.* at 281-83.) Subpart B has two separate parts: (1) that the State made improper comments regarding Lisle's mitigation presentation, and (2) that the State misstated the law regarding mercy. (*Id.* at 282-83.) In subpart C, Lisle claims: "The State improperly encouraged jurors to sentence Mr. Lisle based on passion and prejudice." (*Id.* at 283-85.) In subpart D, Lisle claims: "The State improperly disparaged trial counsel and Mr. Lisle." (*Id.* at 285-87.) In subpart E, Lisle claims: "The State argued the death penalty was necessary to prevent Mr. Lisle from killing again." (*Id.* at 287-89.) In subpart F, Lisle claims: "The State made a misrepresentation to the trial court." (*Id.* at 289.) In subpart G, Lisle claims that the State's misconduct should be considered singly and cumulatively. (*Id.* at 289-90.) And, in subpart H, Lisle claims that "[t]rial, appellate, and post-conviction counsel were ineffective for failing to challenge the extensive prosecutorial misconduct which occurred in Mr. Lisle's trial." (*Id.* at 290-91.)

Lisle argues that Claim 8 relates back to his original petition, because he raised claims in Claim 8 on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 8 do not relate back to Lisle's original petition by virtue of his having asserted them on his direct appeal.

However, as is discussed above, in section III(D)(1), Lisle did incorporate into his original petition the claims he raised on the appeal in his first state habeas action. With

that in mind, the Court, applying *Mayle*, determines that the following claims in Claim 8 relate back to Lisle's original petition, because his original petition set forth the core operative facts upon which these claims are based: Claims 8A, 8B1, 8C, 8E, 8G (regarding Claims 8A, 8B1, 8C and 8E), and 8H (regarding Claims 8A, 8B1, 8C and 8E). These claims in Claim 8 are not barred by the statute of limitations.

The claims in Claim 8 that relate back to Lisle's original petition, except the claims of ineffective assistance of appellate and post-conviction counsel in Claim 8H, were asserted on Lisle's appeal in his first state habeas action, so they are exhausted and not subject to the procedural default doctrine.

Claims 8B2, 8D, and 8F do not relate back to Lisle's original petition, are barred by the statute of limitations, and will be dismissed on that ground.

Moreover, Claims 8B2, 8D, 8F, and the claims of ineffective assistance of appellate and post-conviction counsel in Claim 8H, were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action, so they are also potentially barred by the procedural default doctrine. However, with respect to claims of ineffective assistance of trial counsel, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*. That determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the ineffective assistance of trial counsel claims in Claims 8B2, 8D, and 8F. The remainder of Claims 8B2, 8D, and 8F—claims other than ineffective assistance of trial counsel—will be dismissed on the ground of procedural default as well as the statute of limitations.

Therefore, the following claims in Claim 8 are dismissed on both statute of limitations and procedural default grounds: all claims other than ineffective assistance of trial counsel in Claims 8B2, 8D, and 8F. The following claims in Claim 8 are dismissed solely on statute of limitations grounds: the claims of ineffective assistance of trial counsel in Claims 8B2, 8D, and 8F. The following claims in Claim 8 are dismissed solely on

procedural default grounds: the claims of ineffective assistance of appellate and post-conviction counsel in Claim 8H. The motion to dismiss will be denied with respect to the following claims in Claim 8: Claims 8A, 8B1, 8C, 8E, 8G (regarding Claims 8A, 8B1, 8C, and 8E), and the claims of ineffective assistance of trial counsel in Claim 8H (regarding Claims 8A, 8B1, 8C, and 8E).

### 9.    Claim 9

In Claim 9, Lisle claims that his federal constitutional rights were violated "because Mr. Lisle was forced to wear a stun belt and shackles during the guilt and penalty phases of his trial." (Fourth Amended Petition (ECF No. 292) at 292-96.) In subpart A of Claim 9, Lisle claims that "[t]he trial court erred in failing to conduct a hearing to determine whether an essential state interest necessitated the use of a stun belt and shackles." (*Id.* at 293-95.) In subpart B, Lisle claims: "Trial counsel were ineffective for failing to object to the restraints." (*Id.* at 295.) In subpart C, Lisle claims: "Appellate and post-conviction counsel were ineffective in failing to raise this claim." (*Id.* at 295-96.)

Lisle makes no argument, specific to Claim 9, that Claim 9 relates back to his original petition. The claims in Claim 9 do not relate back to Lisle's original petition. All of Claim 9 is barred by the statute of limitations.

Lisle argues that the Nevada Supreme Court necessarily considered this claim as part of its mandatory review of his case on direct appeal pursuant to NRS § 177.055. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 132.) As is discussed above, in section III(B)(2), the Court finds that Lisle has not shown that these claims were "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer*, 463 F.3d at 954-56.

The claims in Claim 9 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 9, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the

merits of the claims, such that it cannot be properly addressed at this point in this action. Thus, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 9.

Therefore, all of Claim 9, other than claims of ineffective assistance of trial counsel, is dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 9 are dismissed on statute of limitations grounds.

### 10.    Claim 10

In Claim 10, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to sever the charge of being an ex-felon in possession of a firearm from his first-degree murder charge." (Fourth Amended Petition (ECF No. 292) at 297-98.)

Claim 10 relates back to Lisle's original petition because Lisle asserted a similar claim, based on the same core operative facts, on the appeal in his first state habeas action, and, as is discussed above, in section III(D)(1), the claims asserted in Lisle's first state habeas action were incorporated into Lisle's original petition. (*See* Appellant's Opening Brief, Exh. BBBB at 57-59 (ECF No. 188-2 at 60-62).) Claim 10 is not barred by the statute of limitations.

Lisle raised Claim 10, other than the claims of ineffective assistance of appellate and post-conviction counsel, on his direct appeal and on the appeal in his first state habeas action. (*See* Appellant's Opening Brief, Exh. WW at 45-48 (ECF No. 186-23 at 55-58); Appellant's Opening Brief, Exh. BBBB at 57-59 (ECF No. 188-2 at 60-62).) To that extent, Claim 10 is not procedurally defaulted.

Lisle did not, however, raise the claims of ineffective assistance of appellate and post-conviction counsel in Claim 10 on his direct appeal or on the appeal in his first state habeas action. (*See* Appellant's Opening Brief, Exh. WW, at 45-48 (ECF No. 186-23 at 55-58); Appellant's Opening Brief, Exh. BBBB, at 57-59 (ECF No. 188-2 at 60-62).) To that extent, Claim 10 is procedurally defaulted.

The claims of ineffective assistance of appellate and post-conviction counsel in Claim 10 will be dismissed as barred by the procedural default doctrine; with respect to the remainder of Claim 10, the motion to dismiss will be denied.

### 11. Claim 11

In Claim 11, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously admitted the out-of-court testimony of a witness who inculpated Mr. Lisle." (Fourth Amended Petition (ECF No. 292) at 299-306.) The witness referred to in Claim 11 is Jason Sullivan. (*See id.*)

Lisle argues that Claim 11 relates back to his original petition because he raised claims in Claim 11 on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. Claim 11 does not relate back to Lisle's original petition by virtue of his having asserted such claims on his direct appeal. All of Claim 11 is barred by the statute of limitations.

Lisle raised Claim 11, other than the claims of ineffective assistance of appellate counsel, on his direct appeal. (*See* Appellant's Opening Brief, Exh. WW at 54-57 (ECF No. 186-23 at 64-67).) To that extent, Claim 11 is not procedurally defaulted.

Lisle did not, however, raise the claims of ineffective assistance of appellate counsel in Claim 11 on his direct appeal, or on the appeal in his first state habeas action. (*See* Appellant's Opening Brief, Exh. WW (ECF No. 186-23); Appellant's Opening Brief, Exh. BBBB (ECF No. 188-2).) To that extent, Claim 11 is procedurally defaulted.

Claim 11, other than the claims of ineffective assistance of appellate counsel, will be dismissed as barred by the statute of limitations. The claims of ineffective assistance of appellate counsel in Claim 11 will be dismissed as barred by both the statute of limitations and the procedural default doctrine.

### 12. Claim 12

In Claim 12, Lisle claims that his federal constitutional rights were violated "because the State's failure to disclose material exculpatory and impeachment evidence deprived Mr. Lisle of fundamentally fair proceedings." (Fourth Amended Petition (ECF No. 292) at 307-28.) In subpart A of Claim 12, Lisle claims: "The State failed to disclose material impeachment evidence related to its witness Adam Evans." (*Id.* at 308-16.) In subpart B, Lisle claims: "The State failed to disclose material impeachment evidence related to its witness John Melcher." (*Id.* at 317-22.) In subpart C, Lisle claims: "The State failed to turn over handwritten notes of a conversation with Mr. Melcher." (*Id.* at 323.) In subpart D, Lisle claims: "The CCDA's 'open file' policy failed to comply with constitutional discovery obligations." (*Id.* at 323-25.) And, in subpart E, Lisle claims: "The State failed to disclose cash payments made to witnesses." (*Id.* at 325-28.)

Lisle does not make any argument, specific to any of the claims in Claim 12, that any of these claims relate back to his original petition. The claims in Claim 12 do not relate back to Lisle's original petition. All of Claim 12 is barred by the statute of limitations.

Regarding the question of procedural default, Respondents concede that Lisle raised Claims 12B and 12C on his direct appeal. (*See* Motion to Dismiss (ECF No. 293) at 23.) Those parts of Claim 12 are not subject to dismissal on procedural default grounds.

And, with respect to Claims 12A, 12D, 12E, and 12F, Lisle appears to argue that he can show cause and prejudice to overcome the procedural default of those claims, because the State withheld material relative to the claims; in light of this assertion by Lisle—and without determining its merits at this time—the Court does not address the question of the procedural default of these claims in this Order.

All of Claim 12 will be dismissed on statute of limitations grounds.

### 13. Claim 13

In Claim 13, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to call John Melcher's attorney to testify." (Fourth Amended Petition (ECF No. 292) at 329-31.)

Lisle argues that Claim 13 relates back to his original petition, because he raised the claim in Claim 13 on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 13 do not relate back to Lisle's original petition by virtue of his having asserted them on his direct appeal. Claim 13 does not relate back to Lisle's original petition. All of Claim 13 is barred by the statute of limitations.

Turning to the issue of procedural default, Lisle asserted the claims in Claim 13, other than claims of ineffective assistance of counsel, on his direct appeal. (*See* Appellant's Opening Brief, Exh. WW at 64-68 (ECF No. 186-23 at 75-79).) To that extent, Claim 13 is not procedurally defaulted.

Lisle did not assert, on his direct appeal, or on the appeal in his first state habeas action, the claims of ineffective assistance of counsel in Claim 13, and those claims are therefore subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 13, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 13.

Therefore, the claims of ineffective assistance of appellate and post-conviction counsel in Claim 13 are dismissed on both statute of limitations grounds and procedural default grounds; the remainder of Claim 13 is dismissed on statute of limitations grounds only.

///

### 14.    Claim 14

In Claim 14, Lisle claims that his federal constitutional rights were violated "because the trial court did not strike the testimony of John Melcher because the State had instructed Mr. Melcher not to speak to Mr. Lisle's attorneys." (Fourth Amended Petition (ECF No. 292) at 332-34.)

Lisle makes no argument, specific to any of the claims in Claim 14, that any of these claims relate back to his original petition. The claims in Claim 14 do not relate back to Lisle's original petition. All of Claim 14 is barred by the statute of limitations.

Regarding the question of procedural default, Claim 14, other than the claims of ineffective assistance of counsel, was presented in state court on Lisle's direct appeal. (*See* Appellant's Opening Brief, Exh. WW at 51-54 (ECF No. 186-23 at 61-64).) To that extent, Claim 14 is not subject to dismissal as procedurally defaulted.

Lisle did not, however, raise the claims of ineffective assistance of counsel in Claim 14 on either his direct appeal or the appeal in his first state habeas action. Those claims are procedurally defaulted, and Lisle makes no argument, specific to Claim 14, that he can overcome the procedural default.

The claims of ineffective assistance of counsel in Claim 14 are dismissed on both statute of limitations and procedural default grounds; the remainder of Claim 14 is dismissed solely on statute of limitations grounds.

### 15.    Claim 15

In Claim 15, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously instructed the jury at the guilt and penalty phase proceedings." (Fourth Amended Petition (ECF No. 292) at 335-56.) In subpart A of Claim 15, Lisle claims that the trial court improperly instructed the jury in the guilt phase of the trial. (*Id.* at 335-51.) In subpart A1, Lisle claims that the trial court improperly instructed the jury regarding the elements of first-degree murder. (*Id.* at 335-41.) In subpart A2, Lisle claims that the trial court improperly instructed the jury regarding reasonable doubt. (*Id.* at 342-43.) In subpart A3, Lisle claims that the trial court failed "to give a curative

instruction after the erroneous introduction of prior bad act evidence." (*Id.* at 344.) In subpart A4, Lisle claims that the trial court "failed to properly instruct the jury on the theories of aiding and abetting and conspiracy to commit murder." (*Id.* at 344-47.) In subpart A5, Lisle claims that the trial court did not properly instruct the jury regarding possession of a deadly weapon. (*Id.* at 347-49.) In subpart A6, Lisle claims that the trial court gave an "equal and exact justice instruction," which "improperly minimized the State's burden of proof." (*Id.* at 349-51.) In subpart B, Lisle claims that the trial court improperly instructed the jury in the penalty phase of the trial. (*Id.* at 351-56.) In subpart B1, Lisle claims that the trial court gave an "anti-sympathy" instruction. (*Id.* at 351-53.) In subpart B2, Lisle claims that the trial court failed to instruct the jury "regarding the limited use of prior bad act evidence." (*Id.* at 353-56.)

Lisle argues that certain claims in Claim 15 relate back to his original petition because he raised them on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. The claims in Claim 15 do not relate back to Lisle's original petition by virtue of his having asserted them on his direct appeal. Claim 15 does not relate back to Lisle's original petition. All of Claim 15 is barred by the statute of limitations.

Regarding procedural default, one part of Claim 15, Claim 15B2, other than the claims of ineffective assistance of counsel, was presented in state court on Lisle's direct appeal. (*See* Appellant's Opening Brief, Exh. WW at 76-78 (ECF No. 186-23 at 87-89).) To that extent, Claim 15 is not subject to dismissal as procedurally defaulted.

Lisle did not, however, raise any other part of Claim 15 on either his direct appeal or the appeal in his first state habeas action. Those claims, then, are procedurally defaulted. With respect to the claims of ineffective assistance of trial counsel in Claim 15,

Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 15.

All the claims of ineffective assistance of trial counsel in Claim 15, and Claim 15B, other than the claims of ineffective assistance of appellate and post-conviction counsel, are dismissed on statute of limitations grounds only; the remainder of Claim 15 is dismissed on both statute of limitations and procedural default grounds.

### 16. Claim 16

In Claim 16, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to sever his trial from that of his co-defendant." (Fourth Amended Petition (ECF No. 292) at 357-67.)

Claim 16 is not barred by the statute of limitations. On the appeal in his first state habeas action, Lisle asserted a similar claim, one based on the same core operative facts, and, as is discussed above, in section III(D)(1), that claim was incorporated into Lisle's original petition in this case. (*See* Appellant's Opening Brief, Exh. BBBB at 44-56 (ECF No. 188-2 at 47-59).)

Lisle raised Claim 16, other than the claims of ineffective assistance of counsel, on his direct appeal and on the appeal in his first state habeas action. (*See* Appellant's Opening Brief, Exh. WW at 42-45 (ECF No. 186-23 at 52-55); Appellant's Opening Brief, Exh. BBBB at 44-56 (ECF No. 188-2 at 47-59).) To that extent, Claim 16 is not procedurally defaulted.

Lisle did not, however, raise the claims of ineffective assistance of counsel in Claim 16 on his direct appeal or on the appeal in his first state habeas action. (*See* Appellant's Opening Brief, Exh. WW at 42-45 (ECF No. 186-23 at 52-55); Appellant's Opening Brief, Exh. BBBB at 44-56 (ECF No. 188-2 at 47-59).) The claims of ineffective assistance of counsel in Claim 16 are procedurally defaulted. With respect to the claims of ineffective

assistance of trial counsel in Claim 16, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 16. Regarding the other claims of ineffective assistance of counsel in Claim 16—those not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

The claims of ineffective assistance of appellate and post-conviction counsel in Claim 16 will be dismissed as barred by the procedural default doctrine; with respect to the remainder of Claim 16, the motion to dismiss will be denied.

### 17. Claim 17

In Claim 17, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously denied Mr. Lisle's motion to compel discovery of the State's written notes of an interview with its key witness John Melcher." (Fourth Amended Petition (ECF No. 292) at 368-70.)

Lisle argues that Claim 17 relates back to his original petition because he raised it on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. Claim 17 does not relate back to Lisle's original petition by virtue of his having asserted it on his direct appeal. Claim 17 does not relate back to Lisle's original petition. Claim 17 is barred by the statute of limitations.

Regarding the question of procedural default, however, Lisle's assertion of the claim in Claim 17 on his direct appeal (*see* Appellant's Opening Brief, Exh. WW at 48-51 ///

(ECF No. 186-23 at 58-61)) does mean that Claim 17 is not subject to dismissal as procedurally defaulted.

Claim 17 is dismissed as barred by the statute of limitations.

### 18.    Claim 18

In Claim 18, Lisle claims that his federal constitutional rights were violated "because the trial court erroneously struck Darlene Falvey's testimony, depriving Mr. Lisle of an opportunity to rebut evidence of aggravating circumstances." (Fourth Amended Petition (ECF No. 292) at 371-77.)

Lisle argues that Claim 18 relates back to his original petition because he raised it on his direct appeal to the Nevada Supreme Court, and the Nevada Supreme Court's opinion on that appeal was attached to his original petition in this case. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 99-102.) As is discussed above, in section III(D)(1), the Court determines that Lisle's attachment of the Nevada Supreme Court's opinion on his direct appeal did not serve to include the claims he made on that appeal in his original petition in this case. Claim 18 does not relate back to Lisle's original petition by virtue of his having asserted it on his direct appeal. Claim 18 does not relate back to Lisle's original petition. Claim 18 is barred by the statute of limitations.

Regarding the question of procedural default, Lisle did assert Claim 18—except for the claims of ineffective assistance of trial counsel—on his direct appeal. (*See* Appellant's Opening Brief, Exh. WW at 71-73 (ECF No. 186-23 at 82-84).) Therefore, those claims are not procedurally defaulted.

Lisle did not raise the claims of ineffective assistance of trial counsel in Claim 18 on his direct appeal, or on the appeal in his first state habeas action. Those claims, therefore, are potentially procedurally defaulted. However, with respect to such claims of ineffective assistance of trial counsel, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez.* That determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this ///

46

1  time. Therefore, the Court does not, in this Order, consider the question of the procedural

2  default of the claims of ineffective assistance of trial counsel in Claim 18.

3      Claim 18 is dismissed as barred by the statute of limitations.

4          **19.     Claim 19**

5      In Claim 19, Lisle claims that his federal constitutional rights were violated

6  "because the State improperly referred to the fact that another jury had sentenced Mr.

7  Lisle to death." (Fourth Amended Petition (ECF No. 292) at 378-81.)

8      Lisle makes no argument, specific to any of the claims in Claim 19, that any of

9  these claims relate back to his original petition. The claims in Claim 19 do not relate back

10  to Lisle's original petition. All of Claim 19 is barred by the statute of limitations.

11      Lisle argues that the Nevada Supreme Court necessarily considered this claim as

12  part of its mandatory review of his case on direct appeal pursuant to NRS § 177.055. (*See*

13  Opposition to Motion to Dismiss (ECF No. 298) at 133-34.) As is discussed above, in

14  section III(B)(2), the Court finds that Lisle has not shown that these claims were "clearly

15  encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record

16  reviewed by the Nevada Supreme Court. *See Comer*, 463 F.3d at 954-56.

17      The claims in Claim 19 were not asserted by Lisle on either his direct appeal or the

18  appeal in his first state habeas action. Therefore, these claims are subject to the

19  procedural default doctrine. With respect to the claims of ineffective assistance of trial

20  counsel in Claim 19, Lisle could possibly show cause and prejudice to overcome the

21  procedural default, under *Martinez*; that determination, though, is intertwined with the

22  merits of the claims, such that it cannot be properly addressed at this point in this action.

23  Therefore, the Court does not, in this Order, consider the question of the procedural

24  default of the claims of ineffective assistance of trial counsel in Claim 19. Regarding the

25  other claims in Claim 19—those not asserting ineffective assistance of trial counsel—Lisle

26  does not make any argument, specific to those claims, that he can overcome the

27  procedural default.

28  ///

Therefore, all claims in Claim 19, other than claims of ineffective assistance of trial counsel, are dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 19 are dismissed on statute of limitations grounds.

### 20. Claim 20

Claim 20 only reiterates claims made elsewhere in the Petition. Specifically, it reasserts claims made in Claims 4, 10, and 15. Claim 20 adds nothing to those other claims; it is redundant. To the extent that Claim 20 asserts a cumulative error claim, it adds nothing to Claim 28. Claim 20 will be dismissed.

### 21. Claim 21

In Claim 21, Lisle claims that his federal constitutional rights were violated "by the failure to submit all of the elements of capital eligibility to the grand jury or to a court for a probable cause determination." (Fourth Amended Petition (ECF No. 292) at 387-88.)

Lisle makes no argument, specific to Claim 21, that any of the claims in Claim 21 relate back to his original petition. The claims in Claim 21 do not relate back to Lisle's original petition. All of Claim 21 is barred by the statute of limitations.

The claims in Claim 21 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 21, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 21. Regarding the other claims in Claim 21—those not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

///

Therefore, all claims in Claim 21, other than claims of ineffective assistance of trial counsel, are dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 21 are dismissed on statute of limitations grounds.

### 22. Claim 22

In Claim 22, Lisle claims that lethal injection is cruel and unusual punishment. (Fourth Amended Petition (ECF No. 292) at 389-414.) In subpart A of Claim 22, Lisle claims that "[l]ethal injection is unconstitutional in all circumstances." (*Id.* at 389-98.) In subpart B, Lisle claims that "[l]ethal injection in Nevada is unconstitutional." (*Id.* at 398-414.)

Claim 22A does not relate back to Lisle's original petition in this case. Also, as Claim 22A was not raised on either Lisle's direct appeal or the appeal in his first state habeas action, it is subject to dismissal as procedurally defaulted. Claim 22A will be dismissed on statute of limitations and procedural default grounds.

With respect to Claim 22B, there is a question whether the claim is ripe, and subject to adjudication in this habeas action, as it is unclear whether the State has established the protocol by which Lisle's execution would be conducted. The Court will deny Respondents' motion to dismiss Claim 22B, and will leave the question of the ripeness of Claim 22B, and any other issues concerning the claim, to be determined after Respondents file an answer and Petitioner files a reply.

### 23. Claim 23

In Claim 23, Lisle claims that his federal constitutional rights were violated "because Mr. Lisle's capital trial, sentencing, and review on direct appeal were conducted before state judicial officers whose tenure in office was not during good behavior but whose tenure was dependent on popular election." (Fourth Amended Petition (ECF No. 292) at 415-22.)

///

///

1    Lisle makes no argument, specific to Claim 23, that the claim relates back to his

2    original petition. Claim 23 does not relate back to Lisle's original petition. Claim 23, in its

3    entirety, is barred by the statute of limitations.

4    Lisle did not raise Claim 23 on either his direct appeal or the appeal in his first state

5    habeas action; it is, therefore, subject to dismissal as procedurally defaulted. Lisle does

6    not make any argument specific to Claim 23 that he can overcome the procedural default

7    of that claim.

8    Claim 23 will be dismissed on both statute of limitations grounds and procedural

9    default grounds.

10                              **24.    Claim 24**

11    In Claim 24, Lisle claims that his federal constitutional rights were violated

12    "because the state courts failed to provide Mr. Lisle with the effective assistance of

13    counsel during the appellate and post-conviction stages of his proceedings." (Fourth

14    Amended Petition (ECF No. 292) at 423-32.)

15    Claim 24 generally claims that Lisle received ineffective assistance of counsel on

16    his direct appeal and in his first state habeas action. Claim 24 does not describe any

17    particular error made by his counsel, or any particular prejudice to him. Instead, in Claim

18    24 Lisle simply incorporates all the other claims in Lisle's Petition. As such, Claim 24 is

19    redundant of Lisle's other claims. Claim 24 will be dismissed for that reason.

20                              **25.    Claim 25**

21    In Claim 25, Lisle claims that his death sentence is invalid under the federal

22    constitution "because the Nevada capital punishment system operates in an arbitrary and

23    capricious manner." (Fourth Amended Petition (ECF No. 292) at 433-36.)

24    Lisle makes no argument, specific to Claim 25, that the claim relates back to his

25    original petition. Claim 25 does not relate back to Lisle's original petition. Claim 25, in its

26    entirety, is barred by the statute of limitations.

27    Lisle did not raise Claim 25 on either his direct appeal or the appeal in his first

28    habeas action; it is, therefore, subject to dismissal as procedurally defaulted. Lisle does

not make any argument specific to Claim 25 that he can overcome the procedural default of that claim.

Claim 25 will be dismissed on both statute of limitations grounds and procedural default grounds.

### 26. Claim 26

In Claim 26, Lisle claims that his death sentence is invalid under the federal constitution "because the death penalty is cruel and unusual punishment in all circumstances." (Fourth Amended Petition (ECF No. 292) at 437-38.)

Lisle makes no argument, specific to Claim 26, that the claim relates back to his original petition. Claim 26 does not relate back to Lisle's original petition. Claim 26, in its entirety, is barred by the statute of limitations.

Lisle did not raise Claim 26 on either his direct appeal or the appeal in his first state habeas action; it is, therefore, subject to dismissal as procedurally defaulted. Lisle does not make any argument specific to Claim 26 that he can overcome the procedural default of that claim.

Claim 26 will be dismissed on both statute of limitations grounds and procedural default grounds.

### 27. Claim 27

In Claim 27, Lisle claims: "Mr. Lisle's sentence violates the International Covenant on Civil and Political Rights." (Fourth Amended Petition (ECF No. 292) at 439-40.)

Lisle makes no argument, specific to Claim 27, that the claim relates back to his original petition. Claim 27 does not relate back to Lisle's original petition. Claim 27, in its entirety, is barred by the statute of limitations.

Lisle did not raise Claim 27 on either his direct appeal or the appeal in his first state habeas action; it is, therefore, subject to dismissal as procedurally defaulted. Lisle does not make any argument specific to Claim 27 that he can overcome the procedural default of that claim.

///

Claim 27 will be dismissed on both statute of limitations grounds and procedural default grounds.

### 28.    Claim 28

In Claim 28, Lisle claims that his federal constitutional rights were violated "due to the cumulative errors in the admission of evidence and instructions, gross misconduct by state officials and witnesses, and the systematic deprivation of Mr. Lisle's right to the effective assistance of counsel." (Fourth Amended Petition (ECF No. 292) at 441-42.)

Claim 28 is a cumulative error claim. Claim 28 is procedurally viable to the extent that there are other claims in Lisle's petition that remain procedurally viable. The motion to dismiss will be denied with respect to Claim 28.

### 29.    Claim 29

In Claim 29, Lisle claims that his conviction and death sentence are invalid under the federal constitution "because he may become incompetent to be executed." (Fourth Amended Petition (ECF No. 292) at 443.)

There is a question whether this claim is ripe. The Court will deny Respondents' motion to dismiss Claim 29, and will leave the question of the ripeness of Claim 29, and any other issues concerning the claim, to be determined after Respondents file an answer and Petitioner files a reply.

### 30.    Claim 30

In Claim 30, Lisle claims that his "trial, conviction, sentence, appeal and all post-conviction proceedings are and were fundamentally unfair," and in violation of the federal constitution, "because severe mental and physical illness rendered him incompetent during those proceedings," and because of "maltreatment while incarcerated." (Fourth Amended Petition (ECF No. 292) at 444-64.) In subpart A of Claim 30, Lisle claims: "Mr. Lisle had known mental and physical issues . . . before his trial." (*Id.* at 445-48.) In subpart B, Lisle claims: "Circumstances of Mr. Lisle's confinement at Ely State Prison have exacerbated Mr. Lisle's physical and mental health issues." (*Id.* at 448-63.)

///

Lisle makes no argument, specific to Claim 30, that the claim relates back to his original petition. Claim 30 does not relate back to Lisle's original petition. Claim 30, in its entirety, is barred by the statute of limitations.

Lisle did not raise Claim 30 on either his direct appeal or the appeal in his first state habeas action; it is, therefore, subject to dismissal as procedurally defaulted. Lisle does not make any argument specific to Claim 30 that he can overcome the procedural default of that claim.

Claim 30 will be dismissed on both statute of limitations grounds and procedural default grounds.

### 31. Claim 31

In Claim 31, Lisle claims that his federal constitutional rights were violated "because Mr. Lisle's attorneys failed to object to the admission of evidence during the penalty phase of his trial which recounted events that did not result in a criminal conviction and that occurred before Mr. Lisle reached the age of eighteen." (Fourth Amended Petition (ECF No. 292) at 465-68.)

Lisle makes no argument, specific to any of the claims in Claim 31, that any of these claims relate back to his original petition. The claims in Claim 31 do not relate back to Lisle's original petition. All of Claim 31 is barred by the statute of limitations.

Lisle argues that the Nevada Supreme Court necessarily considered this claim as part of its mandatory review of his case on direct appeal pursuant to NRS § 177.055. (*See* Opposition to Motion to Dismiss (ECF No. 298) at 133-34.) As is discussed above, in section III(B)(2), the Court finds that Lisle has not shown that these claims were "clearly encompassed" within the scope of NRS § 177.055 and "readily apparent" in the record reviewed by the Nevada Supreme Court. *See Comer*, 463 F.3d at 954-56.

The claims in Claim 31 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 31, Lisle could possibly show cause and prejudice to overcome the

procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 31. Regarding the other claims in Claim 31—those not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

Therefore, all claims in Claim 31, other than claims of ineffective assistance of trial counsel, are dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 31 are dismissed on statute of limitations grounds.

### 32. Claim 32

In Claim 32, Lisle claims that his federal constitutional rights were violated "because the State committed prosecutorial misconduct in presenting testimony that improperly bolstered its witnesses; the trial court erred in allowing that testimony; and trial counsel provided ineffective assistance in failing to object to that testimony, move to strike that testimony, and move for a mistrial following the jury's exposure to that testimony. (Fourth Amended Petition (ECF No. 292) at 469-78.)

Lisle makes no argument, specific to Claim 32, that the claim relates back to his original petition. Claim 32 does not relate back to Lisle's original petition. Claim 32, in its entirety, is barred by the statute of limitations.

The claims in Claim 32 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 32, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural

1    default of the claims of ineffective assistance of trial counsel in Claim 32. Regarding the
2    other claims in Claim 32—those not asserting ineffective assistance of trial counsel—Lisle
3    does not make any argument, specific to those claims, that he can overcome the
4    procedural default.

5            Therefore, all claims in Claim 32, other than claims of ineffective assistance of trial
6    counsel, are dismissed on both statute of limitations grounds and procedural default
7    grounds; the claims of ineffective assistance of trial counsel in Claim 32 are dismissed on
8    statute of limitations grounds.

9                              **33.    Claim 33**

10           In Claim 33, Lisle claims that his federal constitutional rights were violated
11   "because the trial court erroneously admitted hearsay evidence of an alleged prior bad
12   act committed by Mr. Lisle." (Fourth Amended Petition (ECF No. 292) at 479-85.)

13           Lisle makes no argument, specific to Claim 33, that the claim relates back to his
14   original petition. Claim 33 does not relate back to Lisle's original petition. Claim 33, in its
15   entirety, is barred by the statute of limitations.

16           The claims in Claim 33 were not asserted by Lisle on either his direct appeal or the
17   appeal in his first state habeas action. Therefore, these claims are subject to the
18   procedural default doctrine. With respect to the claims of ineffective assistance of trial
19   counsel in Claim 33, Lisle could possibly show cause and prejudice to overcome the
20   procedural default, under *Martinez*; that determination, though, is intertwined with the
21   merits of the claims, such that it cannot be properly addressed at this point in this action.
22   Therefore, the Court does not, in this Order, consider the question of the procedural
23   default of the claims of ineffective assistance of trial counsel in Claim 33. Regarding the
24   other claims in Claim 33—those not asserting ineffective assistance of trial counsel—Lisle
25   does not make any argument, specific to those claims, that he can overcome the
26   procedural default.

27           Therefore, all claims in Claim 33, other than claims of ineffective assistance of trial
28   counsel, are dismissed on both statute of limitations grounds and procedural default

grounds; the claims of ineffective assistance of trial counsel in Claim 33 are dismissed on statute of limitations grounds.

### 34. Claim 34

In Claim 34, Lisle claims that his federal constitutional rights were violated "because the trial court erred in allowing the State to present evidence of Mr. Lisle's gang membership; trial counsel were ineffective when they failed to object to evidence of Mr. Lisle's gang membership and even elicited some evidence about that issue themselves; and the State committed misconduct when it elicited evidence about Mr. Lisle's gang membership in violation of the trial court's pretrial order." (Fourth Amended Petition (ECF No. 292) at 486-94.)

Lisle makes no argument, specific to Claim 34, that the claim relates back to his original petition. Claim 34 does not relate back to Lisle's original petition. Claim 34, in its entirety, is barred by the statute of limitations.

The claims in Claim 34 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 34, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 34. Regarding the other claims in Claim 34—those not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

Therefore, all claims in Claim 34, other than claims of ineffective assistance of trial counsel, are dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 34 are dismissed on statute of limitations grounds.

### 35. Claim 35

In Claim 35, Lisle claims that his federal constitutional rights were violated "because trial counsel rendered constitutionally deficient assistance when they failed to cover their client's tattoos for trial and failed to object to the State's gratuitous and inflammatory references to the tattoos; and because the trial court erred in admitting State's Exhibit 31." (Fourth Amended Petition (ECF No. 292) at 495-501.)

Lisle makes no argument, specific to Claim 35, that the claim relates back to his original petition. Claim 35 does not relate back to Lisle's original petition. Claim 35, in its entirety, is barred by the statute of limitations.

The claims in Claim 35 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 35, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 35. Regarding the other claims in Claim 35—those not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

Therefore, all claims in Claim 35, other than claims of ineffective assistance of trial counsel, are dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 35 are dismissed on statute of limitations grounds.

### 36. Claim 36

In Claim 36, Lisle claims that his federal constitutional rights were violated because "the trial court erroneously admitted the testimony of Edward Ortiz, and trial counsel rendered deficient performance when they failed to request a limiting instruction on the

jury's use of that testimony, and the trial court erroneously admitted the testimony of Jeff Kurtz." (Fourth Amended Petition (ECF No. 292) at 502-09.)

Lisle makes no argument, specific to Claim 36, that the claim relates back to his original petition. Claim 36 does not relate back to Lisle's original petition. Claim 36, in its entirety, is barred by the statute of limitations.

The claims in Claim 36 were not asserted by Lisle on either his direct appeal or the appeal in his first state habeas action. Therefore, these claims are subject to the procedural default doctrine. With respect to the claims of ineffective assistance of trial counsel in Claim 36, Lisle could possibly show cause and prejudice to overcome the procedural default, under *Martinez*; that determination, though, is intertwined with the merits of the claims, such that it cannot be properly addressed at this point in this action. Therefore, the Court does not, in this Order, consider the question of the procedural default of the claims of ineffective assistance of trial counsel in Claim 36. Regarding the other claims in Claim 36—those not asserting ineffective assistance of trial counsel—Lisle does not make any argument, specific to those claims, that he can overcome the procedural default.

Therefore, all claims in Claim 36, other than claims of ineffective assistance of trial counsel, are dismissed on both statute of limitations grounds and procedural default grounds; the claims of ineffective assistance of trial counsel in Claim 36 are dismissed on statute of limitations grounds.

E.    **Lisle's Motion for Leave to Conduct Discovery and Motion for Orders for Medical Examination and Site Inspection**

Lisle filed, with his opposition to the motion to dismiss, a motion for discovery, and a motion for medical examination and site inspection. (ECF Nos. 300, 305.) Respondents filed oppositions to those motions, and Lisle filed replies. (ECF Nos. 310, 311, 314, 315.)

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Campbell v. Blodgett*, 982 F.2d 1356, 1358 (9th Cir. 1993). However, "[a] judge may, for good cause, authorize a party to

conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a) of the Rules Governing § 2254 Cases. There is good cause for discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The ultimate question whether discovery is justified is within the discretion of the Court. *Id.*

In his motion for discovery, Lisle first requests leave of court to conduct discovery related to the Logan murder, which is the murder that is the subject of Lisle's other capital habeas corpus action in this Court (Case No. 2:03-cv-1005-JCM-CWH). (*See* Motion for Leave to Conduct Discovery (ECF No. 300) at 5-7.) Lisle contends that the discovery will demonstrate that he is actually innocent of the Logan murder, and, therefore, will support his claim of actual innocence in Claim 2 in this case. (*See id.*; *see also* Fourth Amended Petition (ECF No. 292) at 69-229 (Claim 2).) However, the Court determines that this discovery is unnecessary to the resolution of the motion to dismiss. The Court denies the motion to dismiss with respect to Claim 2, without need for this discovery. (*See supra* section III(D)(2).)

Next, in his motion for discovery, and also in his motion for medical examination and site inspection, Lisle requests discovery concerning his physical and mental condition, and the conditions of his confinement, from August 5, 2002, the date on which his first state habeas action was completed, to August 20, 2003, the date on which his original petition in this case was filed, in order to show that he is entitled to equitable tolling during that time period. (*See* Motion for Leave to Conduct Discovery (ECF No. 300) at 7-20; Motion for Orders for Medical Examination and Site Inspection (ECF No. 305).) The Court determines that this discovery, as well, is unnecessary to the resolution of the motion to dismiss. Without need for further factual development, the Court grants Lisle equitable tolling from August 5, 2002, to June 23, 2005, the date of the Supreme Court's *Mayle* decision. (*See supra* sections III(A)(4) and III(A)(5).)

Therefore, the Court will deny Lisle's motion for discovery, and his motion for medical examination and site inspection. The denial of these motions is without prejudice to Lisle seeking discovery relative to the merits of his remaining claims, as contemplated in the scheduling order entered on March 17, 2017. (ECF No. 284.)

### F.    Lisle's Motion for Evidentiary Hearing

Lisle also filed, with his opposition to the motion to dismiss, a motion for evidentiary hearing. (ECF No. 303.) Respondents filed an opposition to that motion, and Lisle filed a reply. (ECF Nos. 312, 316.)

Evidentiary hearings are authorized in federal habeas corpus actions by Rule 8 of the Rules Governing § 2254 Cases. However, an evidentiary hearing is not required if the issues can be resolved by reference to the state court record. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Moreover, "an evidentiary hearing is not required if the claim presents a purely legal question and there are no disputed facts." *Beardslee v. Woodford*, 358 F.3d 560, 585 (9th Cir. 2004); *see also Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

Lisle first requests an evidentiary hearing "to demonstrate that [he] is actually innocent of the death penalty." (*See* Motion for Evidentiary Hearing (ECF No. 303) at 4.) This request relates to Claim 2. (*See* Fourth Amended Petition (ECF No. 292) at 69-229 (Claim 2).) The Court denies the motion to dismiss with respect to Claim 2 without need for further factual development. (*See supra* section III(D)(2).)

Next, Lisle requests an evidentiary hearing "to demonstrate that [he] has suffered prejudice from the delayed focus on the statute of limitations." (*See* Motion for Evidentiary Hearing (ECF No. 303) at 5-6.) This request relates to Lisle's contention that "the State waived its right to assert a statute of limitations defense against his initial federal petition

1  because it failed to raise that issue in the motion to dismiss that it filed on October 4,

2  2004." (*See id.*; *see also supra* section III(A)(3).) However, the Court declines to rule on

3  the waiver argument because, as a result of equitable tolling, Lisle's original petition was

4  timely filed. (*See supra* section III(A)(3).)

5      Lisle also requests an evidentiary hearing to show that he is entitled to equitable

6  tolling during 2002 and 2003. (*See* Motion for Evidentiary Hearing (ECF No. 303) at 5-

7  18.) As with Lisle's request for discovery for this purpose (*see supra* section III(D)), the

8  Court finds that further factual development in this regard is unnecessary. Without need

9  for further factual development, the Court grants Lisle equitable tolling from August 5,

10  2002, to June 23, 2005, the date of the Supreme Court's *Mayle* decision. (*See supra*

11  sections III(A)(4) and III(A)(5).)

12      Finally, Lisle requests an evidentiary hearing to show that he can overcome the

13  procedural default of any of his claims of ineffective assistance of trial counsel, under

14  *Martinez.* (*See* Motion for Evidentiary Hearing (ECF No. 303) at 18-19.) Here too, further

15  factual development is unnecessary to resolve the motion to dismiss. The Court denies

16  the motion to dismiss Lisle's claims of ineffective assistance of trial counsel on procedural

17  default grounds, determining that the question whether Lisle can overcome the procedural

18  default, under *Martinez*, is intertwined with the merits of the claims, such that the question

19  of the procedural default will be better addressed along with the merits of the claims.

20      Therefore, the Court will deny Lisle's motion for evidentiary hearing. The denial of

21  this motion is without prejudice to Lisle seeking an evidentiary hearing relative to the

22  merits of his remaining claims, as contemplated in the scheduling order entered on March

23  17, 2017. (ECF No. 284.)

24  **IV.    CONCLUSION**

25      It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 293) is

26  granted in part and denied in part. All the claims in Petitioner's fourth amended habeas

27  petition are dismissed except the following:

28  ///

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the guilt phase of the trial, for failing to object to the prosecutor's expressions of personal opinion and aligning of himself with the jury, in closing arguments;

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's expressions of personal opinion and aligning of himself with the jury, in closing arguments;

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that allegedly improperly shifted to the defense the burden to prove that mitigating circumstances did not outweigh aggravating circumstances;

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that the jury should "send a message;"

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that Lisle would present a danger in the future;

- Claim 2;

- Claim 8A;

- Claim 8B1;

- Claim 8C;

- Claim 8E;

- Claim 8G (regarding Claims 8A, 8B1, 8C, and 8E);

- the claims of ineffective assistance of trial counsel in Claim 8H (regarding Claims 8A, 8B1, 8C, and 8E);

- Claim 10, except for the claims of ineffective assistance of appellate and post-conviction counsel;

- Claim 16, except for the claims of ineffective assistance of appellate and post-conviction counsel;

- Claim 22B;

- Claim 28; and

- Claim 29.

In all other respects, the motion to dismiss is denied.

It is further ordered that Petitioner's Motion for Leave to Conduct Discovery (ECF No. 300) is denied.

///

It is further ordered that Petitioner's Motion for Evidentiary Hearing (ECF No. 303) is denied.

It is further ordered that Petitioner's Motion for Orders for Medical Examination and Site Inspection (ECF No. 305) is denied.

It is further ordered that Respondents are to, within ninety (90) days from the date of this Order, file an answer, responding to the remaining claims in Petitioner's fourth amended habeas petition, which are the following:

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the guilt phase of the trial, for failing to object to the prosecutor's expressions of personal opinion and aligning of himself with the jury, in closing arguments;

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's expressions of personal opinion and aligning of himself with the jury, in closing arguments;

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that allegedly improperly shifted to the defense the burden to prove that mitigating circumstances did not outweigh aggravating circumstances;

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that the jury should "send a message;"

- the claim in Claim 1 asserting ineffective assistance of trial counsel in the penalty phase of the trial, for failing to object to the prosecutor's argument that Lisle would present a danger in the future;

- Claim 2;

- Claim 8A;

- Claim 8B1;

- Claim 8C;

- Claim 8E;

- Claim 8G (regarding Claims 8A, 8B1, 8C, and 8E);

- the claims of ineffective assistance of trial counsel in Claim 8H (regarding Claims 8A, 8B1, 8C, and 8E);

- Claim 10, except for the claims of ineffective assistance of appellate and post-conviction counsel;

- Claim 16, except for the claims of ineffective assistance of appellate and post-conviction counsel;

1    -   Claim 22B;

2    -   Claim 28; and

3    -   Claim 29.

4    In all other respects, the schedule for further proceedings set forth in the order entered

5    March 17, 2017 (ECF No. 284) remains in effect.

6           DATED THIS 2nd day of July 2018.

7

8                                                _____
                                                 MIRANDA M. DU,
9                                                UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28